REBECCA PORTIS AND OTHERS v. JOHN PARKER.

The fourth section of the Act of the 20th of January, 1840, entitled "An Act to
· adopt the common law of England," &c., provided, that all property which the
husband or wife might bring into the marriage, or acquire during the same,
(except such property as was specially enumerated, and as to which it was
otherwise expressly provided in said Act,) should be the common property of
the husband and wife. The estate which, upon a marriage under this law,
becomes vested in the husband and wife, cannot be divested by any law subse-
quently enacted.

If the common property of a husband and wife, who were married while the
Act of the 20th of January, 1840, was in force, could not, under it, be sub-
jected to execution for the payment of the debts of the husband, contracted
before marriage, it unquestionably could be, under the provisions of the sta-
tute of the 13th of March, 1848, entitled "An Act better defining the marital
rights of parties," although, by the provisions of the latter statute, the pro-
perty thus levied upon would not have become community property, had the
marriage taken place after its enactment.

*On application for rehearing.*

The commentators upon the laws of Spain announce the proposition, that the
common property of the husband and wife is chargeable with community
debts, and the separate property of each with their respective separate debts;
and no doubt, where there was both common and separate property, and common
and separate debts, the community property would be chargeable with the com-
munity debts, and the separate estate with the separate debts. But the court
are not satisfied that the community property was not liable, by the laws of
Spain, for the separate debts of the husband, where he had no separate estate,
inasmuch as they have not had an opportunity sufficiently to explore it to
ascertain satisfactorily its provisions.

Though it was not deemed necessary to say so in the original opinion, commu-
nity property of a husband and wife, married while the statute of the 20th of
January, 1840, was in force, would, under that Act, be liable to execution for
the payment of the separate debts of the husband, contracted before the
marriage.

It is a fallacy to say that, by the law of 1840, the husband and wife acquired
such a vested interest in personal property, which became by the marriage
common property, that it could not afterwards be subjected to their ante-
cedent debts, to which it was before liable. This doctrine would convert
marriage under this law, where the parties possessed only personal property,
into an act of bankruptcy, or would lead to the conclusion, that the *corpus* of

the property would not, after the marriage, be subject to the demands to which it had been previously liable, and that only the issues and profits of such property, could be reached by creditors before the marriage; both of which results would be in opposition to the intent and spirit of our law.

And if the creditors, prior to the marriage, could only look to the issues and profits of the *corpus* of the property taken into the marriage, it would perhaps follow, that subsequent creditors could not subject the *corpus* of the said property to their demands, as this might rob the antecedent creditors of the fund to which alone they could look for the payment of their debts.

If the common property was not liable, under the law of 1840, for the debts of the husband before marriage, it was not because of the wife's interest in it, but because the law did not permit it to be taken in execution; and the court have no doubt of the power of the legislature to subject property to execution that was before exempt.

An *alias* execution, issued after the lapse of one term of the court after the return term of the original execution, is voidable, but not void.

The claimant of property, levied upon by virtue of a voidable execution, is not entitled to assert its invalidity; but if the claimant could have attacked the execution, the question as to its invalidity was not properly made in the court below, merely by an agreement of the parties in the statement of facts, that "exceptions to the admissibility of any of the above facts are reserved to "either party, but they are admitted to be true, if admissible."

APPEAL from Austin.   Tried below before the Hon. Joseph C. Megginson.

This suit was for the trial of the right of property in a wagon and stock of cattle, levied upon by virtue of an *alias* execution, issued from the District Court of Austin county, on the 28th of January, 1851.   As appeared from the recitals in this execution, an original execution issued on the judgment, on the 7th day of December, 1849, which was levied upon three negroes, who were claimed by appellant, as her separate property, and bond was given by her to try the right of property to said negroes.

The record did not show that any question as to the validity of the execution, by virtue of which the property was levied upon, was made in the court below; but in the last clause of the statement of facts, there was the following agreement by the parties, viz., "Exceptions to the admissibility of any of the above "facts are reserved to either party, but they are admitted to be "true, if admissible."   The other facts are stated in the opinion.

*B. C. Franklin,* and *Holland,* for appellants.

*Jones,* for appellee.

BELL, J.  This case involves the following facts.  On the 23d day of October, 1849, the appellee, Parker, recovered a judgment, in the District Court for Austin county, against David Y. Portis.  The judgment was upon a promissory note, given in settlement of a former judgment, recovered by the appellee against David Y. Portis, in the State of Alabama, prior to the year 1840.  Execution issued upon the judgment recovered in Austin county in 1849, and was levied on four hundred and fifty head of cattle, (more or less) and a wagon.

The property levied on was claimed by Mrs. Rebecca Portis, the wife of David Y. Portis, as her separate property ; and bond was given by Mrs. Portis, for the trial of the right of property, under the provisions of the statute.  Mrs. Portis contended also, that if the property levied on was not her separate property, then it was community property of herself and her husband, and as such was not liable to the execution of Parker, the present appellee, inasmuch as the debt due by her husband to Parker, was contracted before her marriage with David Y. Portis.  The evidence showed that David Y. Portis and Mrs. Rebecca Portis were married on the 28th day of December, 1843.  The evidence showed, also, that the wagon levied on was the separate property of Mrs. Rebecca Portis, before her marriage ; and that of the cattle levied on, a portion were the separate property of Mrs. Rebecca Portis before her marriage, and the remainder, amounting to one hundred head, were the increase of the others after her marriage.

A jury was waived, and the cause submitted to the Honorable Joseph C. Megginson, presiding judge, who gave judgment that the whole of the property levied on was subject to the execution of Parker, the present appellee.

The 4th section of the Act of the 20th of January, 1840, entitled "An Act to adopt the common law of England, to

"repeal certain Mexican laws, and to regulate the marital rights
"of parties," provided, "that all property which the husband or
"wife may bring into the marriage, except land and slaves and
"the wife's paraphernalia, and all the property acquired during
"the marriage, except such land or slaves, or their increase, as
"may be acquired by either party by gift, devise or descent,
"and except also the wife's paraphernalia acquired as aforesaid,
"and during the time aforesaid, shall be the common property
"of the husband and wife, and during the coverture, may be sold
"or otherwise disposed of by the husband only." This law was
in force at the time of the marriage of David Y. Portis and his
wife Rebecca; and it is therefore very clear, that the property
on which the execution in this case was levied, was the commu-
nity property of the said Portis and his wife. And being com-
munity property, by the provisions of the law of 1840, the es-
tate which the husband and wife respectively had in the pro-
perty, could not be divested by any law subsequently enacted.
(Const. Art. 7, § 20.)

It being clear, then, that the property levied on is community
property, the single question presented for our determination
is, whether or not the community property of husband and wife
is liable to execution for the debts of the husband, contracted
before the marriage.

The 4th section of the law of 1840, a part of which has been
quoted above, provides also, that "the community property
"shall be first liable for all the debts contracted by the hus-
"band during the marriage, and for debts contracted by the
"wife for necessaries during the same time." The same section
also proceeds to enact that, "upon the dissolution of the
"marriage, by death, after the payment of *all such debts*, the
"remainder of such common property shall go to the survivor,"
&c. The expression, "all such debts," must refer to the debts
before enumerated, viz., "all the debts contracted by the hus-
"band during the marriage, and debts contracted by the wife
"for necessaries during the same time;" and this would seem
to imply, that after the dissolution of the marriage, at least, the

community property should not be subjected to the payment of debts of any other description.

But without discussing the effect of the provisions of the law of 1840, on the question before us, we are of opinion, that the provisions of the statute of the 13th of March, 1848, entitled "An Act better defining the marital rights of parties," are decisive of this question. The third section of the Act of 1848 provides, "that all property acquired by either husband or "wife, during the marriage, except that which is acquired in "the manner specified in the second section of this Act, shall "be deemed the common property of the husband and wife, "and during the coverture, may be disposed of by the husband "only; it shall be liable for the debts of the husband, and for "the debts of the wife contracted during the marriage for ne- "cessaries." It is true, that the second section of the Act of 1848 provided that all the property, both real and personal, owned by the wife before marriage, should remain her separate property; and the property here levied on, having been owned by the wife before marriage, (except the increase of the stock) would have remained her separate property, by the provisions of the law of 1848, if that law had been in force at the time of this marriage. But it was undoubtedly the intention of the law of 1848, to make the common property of the husband and wife, whatever it might be, liable for the debts of the husband; and we think this must be taken to include his debts contracted before the marriage, as well as those contracted during the marriage.

The property here levied on, then, having become community property by the operation of the law of 1840, which was the law of the marriage, became liable, as community property, to this execution for the debt of the husband, by operation of the law of 1848, the last mentioned law having gone into effect before the rendition of the judgment on which this execution issued.

There are some other questions raised and argued by the counsel for the appellants, in their briefs, but we do not think them necessary to be considered in the disposition of the case.

We think it is proper for us to say, that we have not arrived at the conclusion expressed in this opinion, without considering several other interesting questions, akin to the one before us, and growing out of the respective relations of the husband and wife to their common property, and to each other—whether or not, the whole of the common property could be subjected to the payment of the debts of the husband, contracted before the marriage; whether or not, the wife could invoke the aid of the courts, in any case, to prevent the common property from being sold for the debts of the husband, contracted before marriage, and if she could, under what circumstances she could do it; and whether or not, the common property is subject to execution for the debts of the wife, contracted before the marriage. These are all interesting questions. But we do not think it proper to indulge in any discussion of them, lest it might be taken for granted that we have, to some extent, prejudged them.

We are of opinion, that there was no error in the judgment of the court below, and the same is therefore affirmed.

Judgment affirmed.

*A. P. Thompson*, for appellants, submitted at Tyler Term, 1859, an application for a rehearing.* And on the 26th of May, 1859, Mr. Justice Bell made the following remarks upon the application.

The original application for a rehearing of this cause was submitted to us at Galveston, and was attentively considered by us, before the adjournment of the court at that place:

The application for a rehearing has been renewed. The argument of the counsel for the appellants, in support of the application, is conducted with admirable temper, and displays a

---

* The application of Mr. Thompson, for a rehearing in this case, did not come into our hands, with the record; nor is it to be found among the records which we have received from Tyler. We suppose that it must have been lost or mislaid in returning the papers in this case from Tyler to Galveston.—REPORTERS.

Portis v. Parker.

most careful research into the sources and analogies of the law applicable to the case. We have given the subject that deliberate consideration which was demanded both by its intrinsic importance, and by the manner in which it has been presented.

In the determination of the cause at Galveston, we did not think it necessary to enter upon any extended argument in support of the conclusions announced in the opinion of the court. The question presented to us was closely allied to other questions of great importance, and perhaps not free from difficulty, and we were careful to express no opinion upon any question other than the one presented by the record for adjudication. We will adhere to the opinion delivered at Galveston, and at the same time refrain from any elaborate discussion, which would inevitably involve the whole subject of community property, as known to the Spanish law, and as recognized and regulated by our constitution and statutes.

We have not had an opportunity to explore the Spanish law sufficiently, to ascertain to our satisfaction, what the provisions of that law were, in relation to the question before us. We find the proposition announced, by the commentators upon the laws of Spain, that the common property of the husband and wife was chargeable with the community debts, and that the separate debts of each were properly chargeable upon the separate property of each respectively. And we have no doubt, that where there were both community property, and separate estates of husband and wife, the Spanish law charged the community debts upon the community property, and the separate debts upon the separate property; but we are not satisfied that the community property was not liable, by the laws of Spain, for the separate debts of the husband, when he had no separate estate out of which such debts could be discharged.

In the opinion delivered at Galveston, we did not think it necessary to say, that we believed the property levied on in this case was liable to execution under the law of 1840, for the debt of D. Y. Portis contracted before the marriage. But we have no doubt that it was so liable under the law of 1840. We think

45

it is a fallacy to say, that by the law of 1840, the husband and wife acquired such a peculiar vested interest in that kind of personal property which was brought into the marriage, and became common property by the marriage, that it could never be subjected, after the marriage, to the antecedent debts of either of them. Such a doctrine would convert marriage, under the law of 1840, where the parties to the marriage possessed only personal property, into an act of bankruptcy; or it would lead to the conclusion, that the *corpus* of the personal property thus brought into the marriage, was, after the marriage, exempt from the demands of creditors, to whose demands it was before liable; and that only the issues and profits of such personal property, could be reached by creditors for debts contracted before the marriage; both of which results we think would be in opposition to the intent and spirit of our laws. To announce that marriage amounted to a declaration of bankruptcy, would be a startling doctrine indeed; and the plan of exempting the *corpus* of the property, and subjecting only the issues and profits, would introduce a system difficult in its practical operation, and one that would perhaps necessarily fall into irretrievable complication: for if creditors, prior to the marriage, could only look to the issues and profits derivable from the *corpus* of the property taken into the marriage, it would perhaps follow, that creditors after the marriage, could not subject the *corpus* of such property to their demands, because to do so, would be to rob the antecedent creditors of that fund, to the issues and profits of which alone they could look for the payment of their debts.

We think that all these difficulties and embarrassments are avoided, by the plainest and most obvious construction of our statutes. We think the law of 1840 fixed the *status* of the property, as common property; and that, as common property, it was liable to the husband's debts, contracted before the marriage as well as during the marriage, with a preference, as is expressed in the statute, in favor of debts contracted during the marriage. We think that the statute of 1848, in plainer

terms, made the common property liable for the debts of the husband, and that by this was meant his debts before marriage, as well as during the marriage. And even if the common property was not liable, under the law of 1840, for the debts of the husband before marriage, it was not because of the wife's interest in it, but because the law did not permit it to be taken in execution; and we have no doubt of the power of the legislature, to subject property to execution that was before exempt.

The view of the law contended for by the counsel for the appellants, would introduce to us distinct classes of common property—that is to say, two classes of property occupying the same general *status* as common property—to which different rules, as respects the liability of such property to debts, would have to be applied. For instance, that kind of personal property, which was brought into the marriage and became common property by the law of 1840, would occupy the general *status* of common property, but would not be liable to be taken in execution for debts, because, it is said, that the married partners have a vested interest in it that cannot be taken away. The issues and profits of this very property, and all other property acquired during the marriage by onerous title, would be common property, and would be subject to debts. We do not think the law intended any such difference, and we cannot adopt a view of the law, which brings along with it these complications.

As to the question that is made, touching the validity of the execution, we will say but a word. The execution was not void. The decisions of this court establish the proposition, that such an execution is only voidable. The execution not being a void execution, the claimant of the property was not entitled to assert its invalidity; and if Mrs. Portis had been entitled to attack the execution, we are of opinion that she did not make the question properly in the court below. The rehearing will not be granted.

Rehearing refused.