R. P. CARR v. FRANCES TUCKER AND HUSBAND.

1. INCREASE OF SEPARATE PROPERTY OF THE WIFE. The word *increase* in 14th Section, Article 12 of the Constitution, was used in the sense given to the word by previous decisions of the courts, and, as defined, the *increase* does not include *the hire* of separate personal property.

2. MEASURE OF DAMAGES FOR DETENTION OF THE WIFE'S SEPARATE PROPERTY. The wife on recovering by suit her personal property is entitled to damages for the hire of such property while held by the defendant.

3. SET-OFF.  While the hire of the wife's separate property is *community property*, yet the creditor of the husband, in a suit against him by the wife for her separate property, cannot offset his debt against the use and hire of her property while in his possession.  (See 39 Texas, 98.)

APPEAL from Victoria.   Tried below before the Hon. T. C. Barden.

This was an action brought by Frances Tucker and her husband, J. W. Tucker, against Robert T. Carr, to recover two horses, a wagon, harness, etc., alleged to be the separate property of Frances Tucker.  A writ of sequestration was sued out, and the defendant giving a replevy bond retained possession of the property.

Carr claimed the property by purchase from the husband, J. W. Tucker, or from his agent, Jones, alleging that the property was community property, or if the separate property of the wife, that she assented to and approved the sale.

On the trial the jury found for the plaintiff, the aggregate value of the property as fixed by them being three hundred and twenty-three dollars ; the use of the property was assessed at two hundred and ten dollars and fifty cents, for all of which judgment was rendered for Mrs. Frances Tucker.

It appeared that Jones, as agent of J. W. Tucker, had sold Carr the wagon and team, etc., for two hundred and fifty dollars, which sum Carr insisted, in pleading and evidence, he should be allowed to recoup against damages for the use of the property while kept from the possession of the plaintiff, Frances Tucker.

The admission on the part of plaintiff of evidence of value of the use and hire of the property, and the refusal by the court to allow the debt of Carr to be set off against the hire, was assigned as error.

*Glass & Callender*, for appellant.

*Philips, Lackey & Stayton*, for appellees.

In this case there are two questions presented for the consideration of the court:

*First.* Was the hire of the horses sued for the separate property of the wife?

*Second.* Was the hire of the horses liable to the claim of the defendant Carr, as set up in his plea of reconvention?

The decision of the first question depends on the construction of Article 12, Section 14, of the Constitution of 1869. Since the adoption of this Constitution, what is and what is not community property has not been decided by statute or by judicial decisions. The Act of March 13, 1848, and all the decisions made on this subject, were based on the Constitutions of 1845 and 1866. It may be conceded, therefore, that under these Constitutions, and that Act of the Legislature, the hire of the horses, as claimed in this case, was community property; but a reference to these Constitutions, and a comparison of the language used in them with the language used in the Constitution of 1869, will show at once that the Convention of 1869 intended, and did enlarge the protection theretofore given to married women in their rights of separate property. In the two first of these, in 1845 and in 1866, the term " increase " is not used at all. We first find it in the law of March 13, 1848, and then it refers to " land and slaves " only, and the second section of the Act defines what shall be community property. (Paschal's Digest, Articles 4641–2.) Now, the clause in the Constitution of 1869 reads as follows : " The rights of married " women and their rights of property, real and personal, and " the increase of the same, shall be protected by law." (Const., 1869, Article 12, Section 14).

Here the word " increase " is used for the first time in any Constitution, and refers, not, as in the Act of 1848, to lands and slaves only, but to all personal property, of whatever character or description it may be.

The court will bear in mind, that the Act of 1848, which first uses the term " increase," restricts it to lands and slaves, and then in the second section of the Act defines what shall be con-

sidered community and what is separate property, and that the Constitutions of 1845 and 1866, in which the term " increase " is not used, are the basis of all the decisions our Supreme Court has made on the question now presented for adjudication in this cause. With the difference, then, between the organic laws, under which these decisions were made, can they be invoked, with any show of reason, to sustain the claim of the defendant Carr in his plea in reconvention ? Do they sustain the claim set up, that the hire of the horses was community property ? The leading cases on this subject are those of De Blane v. Lynch, 23 Texas, p. 26, and Forbes v. Durham, 24 Texas, 612.

In the case of De Blane v. Lynch, Justice Bell discusses the meaning of the term " increase," as used in the Act of 1848. He says: " It cannot be doubted that the word ' increase,' as " applied to land or to the soil, means ' that which is produced " ' by the cultivation of it.' * * * * But to adopt this use of the " word ' increase,' as used in our statute, accordingly, would, " we think, be wholly inconsistent with the recognized prin- " ciples of law upon which the system of community is based." Proceeding further, he says : " The principle which lies at the " foundation of the whole system of community property is, " ' that whatever is acquired by the joint effort of the husband " ' and wife, shall be their common property.' "

With regard to this opinion we have to remark,

*First.* That the Constitution of 1869, in its terms, seems to have changed the then " recognized principles of law " inconsistent with the true meaning of the word " increase."

*Second.* The framers of the Constitution of 1869 evidently intended to repeal such portions of the Act of 1848 as might be " inconsistent " with the terms they used, and, by using the word " increase " in the organic law, put it out of the power of the Legislature and the courts to restrict the protection of the rights of married women, which it was their purpose to extend.

*Third.* The word " increase," as used in the Constitution of

1869, was, no doubt, intended to repeal or do away with all decisions theretofore made on the subject of the increase of land, as well as to extend protection to personal property and its "increase."

Then, if this be so, the meaning of the word as given by Justice Bell, not being inconsistent with the present system under the new Constitution, but conforming thereto, may well be considered, as to land, "that which grows out of it or that "which is produced by the cultivation of it;" and as to personal property, "any profit, interest or revenue, that may arise "from its use." That use is as much protected as the property itself. Both stand on the same ground. Indeed, the "use," in most personal property, constitutes its value. Take away the use, and, in many cases, you take away the right. In the absence of a law or contract to the contrary, the ownership carries with it the use or compensation for the use. This is the general rule. If the case at bar is an exception, it devolves on the appellant to show it. The statute of 1848 cannot be invoked for that purpose, for it is silent as to increase of personal property, and is otherwise inapplicable. The decisions heretofore made on the subject cannot be invoked for that purpose, as they, if thus applied, would render the provision in the Constitution of 1869 dormant and inoperative. No contract can be shown, or any agreement to that effect, as in this case the entire control of the horses was taken away from the plaintiff during the pendency of the suit, when the hire occurred. After the horses were seized the defendant replevied them, and used them until he sold them. Both the husband and the wife were alike removed from the possession and control of the animals. There was no joint effort on the part of the husband as to the hire, which lies at the foundation of the system of community property.

But it may be contended that the protection intended to be extended to married women in the Constitution of 1869 is inoperative and dormant, till brought into life and force by an Act of the Legislature.

Suppose the Legislature should entirely omit to pass any Act with reference to this clause of the Constitution; suppose, too, an Act should be passed on the subject of executions in direct contravention of this protective clause. Would the court hold such a law valid in the face of the words: "The rights of mar- "ried women to their separate property, real and personal, and "the increase of the same, shall be protected by law?" (Arti- cle 12, Section 14, Constitution 1869.) Would the court disre- gard this provision on the ground that no Act of the Legisla- ture had been passed to bring it into force? Could the Legislature defeat the plain language of the Organic Law by omission to act, any more than by acting contrary to it? On this point see 2 Texas, 160, 161; Robinson v. Baillieuel, and the case therein cited; 3 Cranch, 159, U. S. v. Moore. In this last case, Chief-Justice Marshall, on the subject of a Constitu- tional provision says: "That such a provision would be an "unanswerable argument in favor of the jurisdiction of the "Supreme Court in the absence of Congressional legislation," thus recognizing the Organic Law as in force, and controlling without legislation. We submit, therefore, that no Act of the Legislature is necessary to render effectual Article 12, Section 14, of the Constitution. If the Act of March 13, 1848, con- tains any principle or definition inconsistent with its protection, such principle and definition are repealed by the Consti- tution.

If we are correct in these views, it follows that the hire of the horses, in this case at least, was the separate property of the wife, and as much protected from the claim set up as the horses themselves.

As to the second point:

Assuming that we are correct in our views on the first ques- tion discussed, it follows that the defendant could obtain title to the hire in the mode pointed out by law only. He could not get it by forced sale under judgment obtained as proposed in his plea of reconvention, but by the wife's consent only, and that consent evidenced as provided by law.

But another question is here presented for the consideration of the court in this connection, and that is as to the plea of reconvention itself.

This plea is sought to be maintained on the ground of fraud on the part of the husband—on the ground of his fraudulent representations in the matter of the horses. In no way is the wife, in this case, a party to any fraud the husband may have perpetrated against the defendant. But, as against the defendant himself, were he a sole defendant, and the hire was his separate property, the plea for damages in such a tort would not be allowed. (Hart v. Davis, 21, 412.)

MOORE, J. The 14th Section of Article 12th of the Constitution says: "The rights of married women to their separate "property, real and personal, and the increase of the same, "shall be protected." And it is insisted that thereby the hire of the separate property of the wife, such as a wagon and horses, is made a part of her separate estate. To maintain this proposition, it must be shown, that any profit, interest, or revenue arising from the use of such property is a part of its increase. But the word "increase," as used in our statutes, relating to separate and community property, had, previous to the adoption of the Constitution, been held not to convey so broad an import.

By the Statute of 1848, defining the marital rights of parties, "the increase of all lands or slaves," of the separate property of either the husband or wife, is declared to be separate property. In an etymological sense, as was said by this court, in the construction of the statute it cannot be doubted that the word "increase," as applied to land, means that which grows out of it, or that which is produced by its cultivation. Yet to adopt this meaning of it in the interpretation of this statute, it was held, would lead to inequitable results wholly inconsistent with the recognized principles of law, upon which our system of community property is based. And therefore, notwithstanding the etymological meaning of the word, the court held that the

crop grown upon the land of the wife by the labor of her slaves, was community property. But certainly no one can insist that the word "increase" can in any etymological sense signify the hire or profit derived from the use or employment of personal property. Who ever imagined that under the law of 1848, the hire of the slaves of the wife was her separate property? That it was not, is so obvious that this is referred to by the court as illustrating the argument leading to the conclusion that the crop grown on the wife's land is not "increase" of land in the sense of the statute. (De Blane v. Lynch, 23 Texas, 25; Forbes v. Dunham, 24 Texas, 612; Portis v. Parker, 22 Texas, 702; Bateman v. Bateman, 25 Texas, 270.)

The word "increase" having received a judicial construction prior to its use in the Constitution, it must be inferred that it was used in a like sense in that instrument. It cannot, therefore, we think, be plausibly maintained that the profits realized by the use of the wife's personal property, or money received from its hire while in possession, and subject to the control of the husband, does not form a part of the community estate.

It does not follow, however, that appellant is therefore entitled to recover against the damages for which he was liable for the wrongful detention of the property of the wife—a demand which he may have against the husband. While, as we have said, the products and profits accruing from its use, as well as money realized by the husband or wife from the hire of her personal property, belong to the community. Certainly no one could imagine a creditor could by any direct process have the property of the wife hired to pay his debt, or appropriated to his use in any manner, to this end. Would not this, in effect, be done if he could wrongfully seize and hold the wife's property, and then reconvene for his demand on the husband against his liability for its use and hire, while suit is pending against him for its recovery?

While the wife's property is in the possession and under the control of the husband, the trouble of its management, and the ordinary expenses of the preservation and maintenance of prop-

22

erty, such as that for which the suit is brought, devolves upon him, and is a charge upon the community. But when it is taken by a wrong-doer from the control of the husband, and the wife is deprived of its entire use and enjoyment, it would seem but reasonable that she should be compensated for its wrongful detention.

The statute regulating sequestrations makes it a condition upon which the defendant may replevy the property sequestrated, if movable, that he will give bond conditioned, in part, that he will have the property, with the value of the hire, fruits, and revenue therof, forthcoming, to abide the decision of the court, or that he will pay the value thereof, and of the hire, fruits and revenue, in case the suit is decided against him. This statute, we think, gives the *owner* of the property the right to recover its hire, fruits and revenue, as incident to the property, as plainly and evidently as it does the property itself, or its value.

If the suit is brought by a married woman for her separate property, the statute gives her the amount adjudged for hire during the pendency of the suit, as fully and completely as does the Constitution secure to her the property or its value. The judgment is an entirety, and the entire recovery vests in her as her separate property by force of the statute, free from the demands of the defendant, or any one else, against the husband. If this was not so, and the defendant could offset the value of the hire by a demand against the husband, as he may elect whether he will restore the property or pay its value,—if he could keep the case in court, until by use the property should become almost valueless, he might by its wrongful detention, in effect, appropriate the corpus of the wife's personal property to the payment of the husband's debt.

The judgment is reversed, and the cause remanded.

Reversed and remanded.