**Troy Lee GRIMES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 769–88.**

Court of Criminal Appeals of Texas, En Banc.

March 27, 1991.

J. Pink Dickens, Clyde M. Hudson, Amarillo, for appellant.

Guy Hardin, Dist. Atty., and Harold L. Comer, Asst. Dist. Atty., Pampa, Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON THE STATE'S PETITIONS FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

A jury convicted appellant, Troy Lee Grimes, of aggravated sexual assault for which he was sentenced to life imprisonment and ordered to pay a $10,000.00 fine. For reasons not important to this opinion, the Amarillo Court of Appeals reversed the conviction "for errors committed in the punishment phase only." [1] Grimes v. State, (Tex.App.—Amarillo, No. 07–87–0137–CR, delivered May 23, 1988) (unpublished opinion). Instead of simply remanding the case to the trial court, the Court of Appeals, after it held that application of Article 44.29(b), V.A.C.C.P., would violate the *Ex Post Facto* Provision of the Texas Constitution, ordered the trial court to provide appellant with "a full new trial." Grimes v. State, (Tex.App.—Amarillo, No.

07–87–0137–CR, delivered June 21, 1988) (unpublished opinion on rehearing). Both the District Attorney and State Prosecuting Attorney petitioned this Court for discretionary review. Both petitions were granted to determine the correctness of the Court of Appeals' holding. We will reverse.

Article 44.29(b) became effective after appellant's trial but before his conviction was reversed on appeal; it provides in part:

"If the court of appeals or the Court of Criminal Appeals awards a new trial to the defendant only on the basis of an error or errors made in the punishment stage of the trial, the cause shall stand as it would have stood in case the new trial had been granted by the court below, except that the court shall commence the new trial as if a finding of guilt had been returned and proceed to the punishment stage of the of the of the trial...." The Court of Appeals noted that "laws changing procedure are not generally within the prohibition imposed by the Texas Constitution on the retroactive application of criminal statutes" but that if it is shown that the *ex post facto* application of Article 44.29(b) deprives the accused of "substantial protection," such application is unconstitutional. Slip op. pp. 2–3, citing *Ex parte Abahosh*, 561 S.W.2d 202, 203 (Tex.Cr.App.1978), and *Ex parte Roper*, 61 Tex.Crim. 68, 134 S.W. 334, 339 (1911). The lower appellate court observed that Article 44.29(b) "deprives the appellant of a retrial on his guilt or innocence," and from this premise the court concluded that "application of the statute was improper." Slip op. p. 3.

Article I, Section 16, of the Texas Constitution provides that "[n]o bill of attainder, *ex post facto* law, retroactive law, or any law impairing the obligation of contracts, shall be made." The term "*ex post facto* law" literally means any law passed "after the fact" or commission of an act,

---

1. In the Court of Appeals, appellant asserted that certain errors had occurred in the guilt/innocence phase of trial along with errors in the punishment phase. The Court of Appeals decided the point of error concerning the guilt/innocence phase of trial adversely to appellant and that issue is not before this Court.

which retrospectively changes the consequences of such act. However, as early opinions from the United States Supreme Court have explained, *"ex post facto* law" is a term of art that had an established meaning at the time of the framing of the United States Constitution. *Collins v. Youngblood,* — U.S. ——, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Justice Chase's opinion in *Calder v. Bull,* 3 Dall. 386, 391, 1 L.Ed. 648 (1798), was the first to delineate those legislative acts which implicated the *Ex Post Facto* Clause of the United States Constitution:

> "1st. Every law that makes an action done before passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Calder,* 3 Dall. at 390.

The early opinions from the Supreme Court accepted the *Calder* definition of *"ex post facto"* as being exclusive. See, e.g., *Fletcher v. Peck,* 6 Cranch 87, 138, 3 L.Ed. 162 (1810); *Cummings v. Missouri,* 4 Wall. 277, 325–326, 18 L.Ed. 356 (1867); *Gut v. State,* 9 Wall. 35, 38, 19 L.Ed. 573 (1870); *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884).[2] With the passage of time, however, the Supreme Court added to the *Calder* definition.

In *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), the Supreme Court held that a Utah law which reduced the size of juries in criminal cases from twelve persons to eight persons deprived Thompson of "a substantial right involved in his liberty." Consequently, when the new law was utilized in his trial after the commission of the offense, such

was said to violate the *Ex Post Facto* Clause of the United States Constitution. 170 U.S. at 352, 18 S.Ct. at 623. The *Thompson* concept of extending the *Ex Post Facto* Clause to protect "substantial rights involved in liberty" has since evolved to prohibit subsequently enacted laws affecting "matters of substance," by depriving a defendant of "substantial protection with which the existing law surrounds the person accused of crime," *Duncan v. Missouri,* 152 U.S. 377, 382–383, 14 S.Ct. 570, 571–572, 38 L.Ed. 485 (1894), or which arbitrarily infringe upon preexisting "substantial personal rights." *Malloy v. South Carolina,* 237 U.S. 180, 183, 35 S.Ct. 507, 508, 59 L.Ed. 905 (1915). See also *Kring v. Missouri,* 107 U.S. 221, 228, 2 S.Ct. 443, 444, 27 L.Ed. 506 (1883) (defining *ex post facto* laws as those which "in relation to the offense or its consequences, alters the situation of a party to his disadvantage").

When interpreting our state constitution's *Ex Post Facto* Provision, Texas cases have followed the Supreme Court lead. Of particular interest is the case of *Ex parte Abahosh,* cited by the Court of Appeals in this case to support its holding. In *Abahosh,* a panel of this Court held that a statute, enacted after a defendant had pled guilty to criminal charges and which restricted his privilege to appeal from that plea, acted to deprive the defendant of "substantial protections." Specifically, Presiding Judge Onion, writing for the panel, stated:

> "At the time of the guilty pleas and the entry of the judgments assessing punishment, appellant's plea bargain did not give the trial court the authority to nullify his right to appeal. To apply the 1977 amendment of Article 44.02, supra, retroactively merely because there was a delay and the imposition of sentence and the giving of the notice of appeal were after the effective date of the amendment *would result in depriving the petitioner of substantial protection* —the

---

**2.** Cases subsequent to *Calder* made clear that the *Ex Post Facto* Clause was not intended to prohibit application of new evidentiary rules in trials for offenses committed before the

changes. See *Thompson v. Missouri,* 171 U.S. 380, 386–387, 18 S.Ct. 922, 924–25, 43 L.Ed. 204 (1898); *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884).

right to appellate review. See *Ex parte Roper,* supra. This would be a violation of Article I, § 16 of our State Constitution, and further violate fundamental fairness embodied in 'the due course of the law of the land.' Article I, § 19, Texas Constitution." 561 S.W.2d at 204 (emphasis added).

Other Texas cases utilizing the *Thompson* "substantial protections" concept of *ex post facto* analysis are: *Ex parte Alegria,* 464 S.W.2d 868, 872 (Tex.Cr.App.1971) (recognizing "substantial disadvantage" test); *Ex parte Rutledge,* 741 S.W.2d 460, 461–462 (Tex.Cr.App.1987) (same); *Hill v. State,* 146 Tex.Crim. 333, 171 S.W.2d 880, 883–884 (App.1943) (Court seemingly adopts "substantial disadvantage" test but purports to accept *Calder v. Bull* definition as exclusive test for *ex post facto* analysis). Recently, however, the Supreme Court, utilized a case originating in this State to reevaluate *Thompson* and its progeny.

In *Collins v. Youngblood,* supra, the Court was asked to determine if Article 37.10(b), V.A.C.C.P.,[3] when applied to a defendant after the commission of his crime but before appellate review, violated the *ex post facto* prohibition of Article 1, Section 10, of the United States Constitution. The Court found that it did not and in so doing disavowed the *Thompson* line of cases. The Court wrote:

"Several of our cases have described as 'procedural' those changes which, even though they work to the disadvantage of the accused, do not violate the *Ex Post Facto* Clause. [Citations omitted.] While these cases do not explicitly define what they mean by the word 'procedural,' it is logical to think that the term refers to changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes. Respondent correctly notes, however, that we have said a procedural change may constitute an *ex post facto* violation if it 'affects matters of substance,' *Beazell [v. Ohio,* 269 U.S. 167, 171, 46 S.Ct. 68 [69], 70 L.Ed. 216 (1925) ] by depriving a defendant of 'substantial protections with which the existing law surrounds the person accused of crime,' *Duncan v. Missouri,* 152 U.S. 377, 382–383, 14 S.Ct. 570 [571–572], 38 L.Ed. 485 (1894), or arbitrarily infringing upon 'substantial personal rights.' *Mallory v. South Carolina,* 237 U.S. 180, 183, 35 S.Ct. 507 [508], 59 L.Ed. 905 (1915); *Beazell,* supra, 269 U.S. at 171 [46 S.Ct. at 69].

"We think this language from the cases cited has imported confusion into the interpretation of the *Ex Post Facto* Clause." 110 S.Ct. at 2720.

The *Youngblood* Court determined that the interpretation most faithful to the "original understanding" of the *Ex Post Facto* Clause is that espoused in *Calder* and that case law adopting the *Thompson* analysis is inconsistent "with the understanding of the term '*ex post facto* ' at the time the Constitution was adopted." 110 S.Ct. at 2722.[4] The Court determined that Article 37.10(b) "does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed." The Court ultimately concluded that Article 37.10(b)'s application to Youngblood was not prohibited by the *Ex Post Facto* Clause of the federal Constitution. 110 S.Ct. at 2724.

We have since adopted the *Collins v. Youngblood* analysis as proper in inter-

3. Article 37.10(b) provides:

"If the jury assesses punishment in a case and in the verdict assesses both punishment that is authorized by law for the offense and punishment that is not authorized by law for the offense, the court shall reform the verdict to show the punishment authorized by law. If the trial court is required to reform a verdict under this subsection and fails to do so, the appellate court shall reform the verdict as provided by this subsection."

4. *Collins v. Youngblood,* besides disavowing the use of language such as "substantial protections" and "personal rights" in any of its prior cases purporting to perform an *ex post facto* analysis, specifically overruled *Kring v. Missouri* and *Thompson v. Utah,* 110 S.Ct. at 2723 and 2724.

preting our state constitutional proscription of *ex post facto* legislation. Judge Clinton, writing for a unanimous Court in *Ex parte Robinson*, 792 S.W.2d 109 (Tex.Cr.App. 1990), declared: "[T]he amendment to [Section 54.02(h) of the Texas Family Code] affects neither the definition or gravity of the crime itself nor the degree or manner of the punishment therefor. We perceive no [State or federal] *ex post facto* violation." 792 S.W.2d at 110, citing, inter alia, *Collins v. Youngblood* and *Calder v. Bull.*

Since Texas first became a State, we have constitutionally prohibited the making of *ex post facto* legislation, see Texas Constitution Article I, Section 16, (1845) Texas Constitution Article I, Section 14 (1861, 1866 and 1869); Texas Constitution Article I, Section 16 (1876), and in so doing Texas courts have followed the Supreme Court's analysis in interpreting the Texas Constitutions. For example, *Holt v. State*, 2 Tex. 363 (1847), was one of the first cases in which the Court undertook to interpret our constitutional prohibition against *ex post facto* legislation. There the court was asked to determine whether a statute which mandated jury sentencing where prior law had mandated judge sentencing violated the Texas Constitution of 1845 when applied to crimes that were committed prior to adoption of the legislation. The *Holt* court adopted the *Calder* definition when it wrote:

> "The acts ... requiring the jury in certain cases to assess the amount of punishment to be inflicted, only provides a different mode of ascertaining the amount of fine or duration of imprisonment from that before existing. It merely substitutes the opinion of the jury for that of the judge ... but it does in no respect operate to the prejudice of the accused, and is not, therefore, an *ex post facto* law in reference to offenses for which these were prosecutions pending at the time of its enactment. The prohibition as to *ex post facto* laws, Constitution, art. 1, section 14, has been held to extend only to a law which makes an act done before its passage, and which was innocent when done, criminal; or which aggravates a crime and makes it greater

than when committed; or which changes a punishment and inflicts a greater punishment than the law annexed to the crime when committed; or which alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender." *Holt*, 2 Tex. at 364, citing, inter alia, *Calder v. Bull.*

*Holt* is consistent with a basic tenet of constitutional interpretation. That is, "if a term appears to have received a judicial construction prior to its use in a constitutional provision, the inference is that it bears this signification." *Gallagher v. State*, 690 S.W.2d 587, 592 (Tex.Cr.App. 1985). See also *Carr v. Tucker*, 42 Tex. 330, 337 (1875). "*Ex post facto*" had a special significance prior to the adoption of the Texas Constitution. The *Youngblood* Court observed:

> "The *Beazell [v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) ] is faithful to our best knowledge of the original understanding of the *Ex Post Facto* Clause: Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts. Several earlier state constitutions employed this definition of the term, and they appear to have been a basis for the Framers' understanding of the provision." 110 S.Ct. at 2719.

As such, we, like the Supreme Court, adopt the *Calder* and *Youngblood* definition of "*ex post facto*" and hold that such is to be used in interpreting the same term found in Article I, Section 16 of the Texas Constitution. Moreover, we disavow the past use of the *Thompson*-like analysis—as it relates to interpreting the *Ex Post Facto* Provision of the Texas Constitution—in any of our prior cases.

In the case before us today, the Court of Appeals utilized *Thompson*'s now disavowed concept of *ex post facto* proscription to find that appellant was entitled to a new trial after a reversal of his conviction: the Court of Appeals held that appellant had a "substantial right" in re-litigating his guilt and therefore Article 44.29(b) could not

take away that right. This is an incorrect analysis under the *Ex Post Facto* Clause of the United States Constitution, the *Ex Post Facto* Provision of the Texas Constitution and our opinion today. "When a court engages in *ex post facto* analysis, [it should be] concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred, [and] it is irrelevant whether the statutory change touches any vested rights." *Weaver v. Graham*, 450 U.S. 24, 29 n. 13., 101 S.Ct. 960, 964 n. 13, 67 L.Ed.2d 17 (1981).[5]

■ In the case before us, application of Article 44.29(b) does not punish as a crime an act previously committed, which was innocent when done; it does not make more burdensome the punishment for a crime after its commission; it does not deprive appellant of any defense available according to law at the time when the act was committed. Its application to appellant therefore is not prohibited by the *Ex Post Facto* Clause of the United States Constitution or the Ex Post Facto Provision of the Texas Constitution. See *Collins v. Youngblood*, 110 S.Ct. at 2724.

■ Appellant argues, however, that the Texas Constitution affords him more protection than the United States Constitution since the Texas Constitution not only prohibits *ex post facto* legislation but also prohibits any "retroactive" legislation. Assuming without deciding that Article I, Section 16's proscription against retroactive legislation is applicable to criminal cases,[6] that provision has never been made applicable to statutes merely affecting matters of procedure which do not disturb vested, substantive rights. See *Holder v. Wood*, 714 S.W.2d 318, 319 (Tex.1986); *Ex parte Abell*, 613 S.W.2d 255, 260–262 (Tex.1981); *Merchant's Fast Motor Lines, Inc. v. Railroad Commission of Texas*, 573 S.W.2d 502, 504–505 (Tex.1978).[7] Clearly, a defendant has no vested right to an entirely new trial when errors relating only to the assessment of his punishment are committed. See and compare *Ex parte Johnson*, 697 S.W.2d 605 (Tex.Cr.App.1985) (statutory amendment providing for reformation on appeal of judgments with unlawful punishments, rather than remanding for new trial, held applicable to all cases pending on

5. The Supreme Court explained that a law need not impair a "vested" right to violate the *ex post facto* prohibition and that evaluating whether a right has vested "is important under the Contracts or Due Process Clauses which solely protect pre-existing entitlements." *Weaver v. Graham*, 450 U.S. at 29–30, 101 S.Ct. at 964–965. The Court further explained:

"The presence or absence of an affirmative, enforceable right is not relevant, however, to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Id. at 30, 101 S.Ct. at 965.

Also, some prior cases have dealt with changes in laws which have disadvantaged the accused but because they were deemed "procedural" changes (as opposed to "substantive" changes) were said not to violate the *Ex Post Facto* Clause. See, e.g., *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) and cases cited therein. These too are obsolete after *Collins v. Youngblood.* As the Court observed, "by simply labeling a law 'procedural,' a legisla-

ture does not thereby immunize it from scrutiny under the *Ex Post Facto* Clause." *Youngblood*, 110 S.Ct. at 2721.

6. See *Ex parte Rutledge*, 741 S.W.2d 460, 461–462 (Tex.Cr.App.1987) (Clinton, J., concurring). But see Cooley, *A Treatise on Constitutional Limitations*, 773 n. 1 (8th ed. 1927). See generally 16A C.J.S., *Constitutional Law*, § 390.

7. In using the concept of "substantial" or "vested" rights the Court of Appeals apparently drew on the test for evaluating retrospective laws only appropriate in a civil context and inappropriate in an *ex post facto* analysis of criminal laws conducted under the federal Constitution. *Weaver v. Graham*, 450 U.S. 24, 31 n. 13, 101 S.Ct. 960, 965 n. 13, 67 L.Ed.2d 17 (1981). See 2 Sands, *Sutherland on Statutory Construction*, § 41.06 (4th ed. 1973); Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv.L.Rev. 692, 696 (1960); Smead, *The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence*, 20 Minn.L. Rev. 775, 782 (1936); Cooley, *A Treatise on Constitutional Limitations*, 773 n. 1 (8th ed. 1927). See generally 16A C.J.S., *Constitutional Law*, § 390. This test may be proper, however, in analyzing whether legislation may be applied retroactively under the State Constitution.

appeal at the time of amendment). As observed by the concurrence in *Youngblood:*

"Respondent does not claim that he was denied any procedural protections relevant to the determination of his guilt or innocence. Nor does he claim that his life sentence was unauthorized by law, or that it was the consequence of improper procedures. Finally, he does not argue that he has been deprived of any avenue of review for correcting errors that may have vitiated the validity of his conviction or sentence.... Youngblood wishes to have a new trial according to the same procedures, regulated by the same laws, open to the same evidence, and capped by the same sentencing limitations that resulted in his conviction and his life sentence....

"Whatever else may be said of the factors that determine whether a procedural protection affects substantial rights, it is difficult to imagine how a retroactive law could, when viewed from the standpoint of the date the offense was committed, implicate substantial rights of any defendant if the law does no more than expand flexibility of post conviction processes available to the State with respect to a defendant who is subject to a valid conviction and sentence. Indeed, respondent has barely even attempted to articulate any justification for the Texas procedure that the legislature abolished. *The mere possibility of a capricious and unlikely windfall is not the sort of procedural protection that could reasonably be judged substantial from the perspective of the defendant at the time the offense was committed.*" 110 S.Ct. at 2728–2729

(Stevens, J., concurring) (emphasis added and footnotes omitted).[8]

We agree. Accordingly, we also hold that the State's constitutional prohibition against retroactive legislation is not violated by Article 44.29(b)'s application in the trial court to cases which have been reversed on appeal for errors committed only in the punishment phase of trial.[9]

That portion of the Court of Appeals' opinion indicating that the trial court is to afford appellant "a full new trial" is vacated and the cause is remanded to the trial court for further proceedings consistent with this opinion.

CLINTON, J., dissents.

MILLER, Judge, concurring.

Although I am in sympathy with much that Judge Baird's dissent says about the proper interpretation of Tex. Const. art I, Sec. 16, the nature of what I and the majority opinion perceive to be a substantial right in Texas criminal jurisprudence compels the conclusion that the statutory "right" under former Art. 44.29, V.A.C. C.P., to have the error free guilt stage of a trial relitigated because of an error in the punishment phase, is not substantial. Opinion at pages 587 and 588.

Thus I concur in the result reached by the majority.

BAIRD, Judge, dissenting.

In this case of first impression, we are called upon to determine whether the federal and/or state constitutions prohibit the retroactive application of Tex.Code Crim. Proc.Ann. art. 44.29(b) to cases tried before, but pending on appeal, at the time of the article's effective date.[1] I respectfully

---

**8.** The concurrence in *Youngblood* would have affirmed the conviction but would have left intact the *Thompson* line of cases.

**9.** The Government Code also provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." V.T.C.A., Gov't Code, Section 311.022. We discern no conflict between Section 311.022 and application of Article 44.29(b) to the cases now on appeal since Article 44.29 will be applied prospectively in the trial courts after the causes have been remanded from this Court or the

Courts of Appeals. See *Zimmerman v. State,* 750 S.W.2d 194, 202–204 (Tex.Cr.App.1988) (Court holding that absent an express legislative intent to the contrary, procedural statutes control litigation from their effective date; i.e., they apply to both pending and future actions); *Wade v. State,* 572 S.W.2d 533, 534 (Tex.Cr.App. 1978) (same).

**1.** The District Attorney's ground for review states, "The Court of Appeals erred in holding that application of Art. 44.29(b), V.A.C.C.P., was retroactive and improper."

dissent to the majority opinion because I believe that appellant is entitled to relief for the following reasons.

## I. FACTUAL SUMMARY

The facts are not disputed. At the punishment phase, the State introduced evidence, over objection, contrary to our holding in *Walker v. State*, 610 S.W.2d 481, 483 (Tex.Cr.App.1980). The jury sentenced appellant to the maximum punishment, life imprisonment and a $10,000 fine. On appeal, the State confessed error. The Court of Appeals found that the law in effect at the time of trial entitled appellant to a new trial as to guilt/innocence for error committed in the punishment phase of trial and remanded the cause to the trial court for a "full new trial." *Grimes v. State*, No. 07–87–0137–CR (Tex.App.—Amarillo delivered June 21, 1988).

## II. UNITED STATES CONSTITUTION

I agree with the majority's treatment of *Collins v. Youngblood*, —— U.S. ——, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), wherein the Supreme Court dramatically altered the concept of what constitutes ex post facto laws under the federal constitution. That case interpreted Tex.Code Crim.Proc.Ann. art. 37.10(b) (allowing appellate courts to reform an improper verdict that assessed a punishment not authorized by law, where prior case law required a new trial), and rejected the proposition that art. 37.10(b) violated the ex post facto clause of U.S. Const. art. I, § 10.[2]

*Youngblood* limits ex post facto laws to those which: 1) punish as a crime an act previously committed, which was innocent when done, 2) creates a more burdensome punishment for a crime after the crime was committed or 3) deprives one charged with a crime of any defense available according to the law in effect at the time the act was done. *Youngblood* expressly overruled former Supreme Court authority suggesting that ex post facto laws included those which affected "substantial" rights. *Youngblood*, —— U.S. at ——, 110 S.Ct. at 2724.

The case at bar involves application of Tex.Code Crim.Proc.Ann. art. 44.29(b) (error in the punishment phase of noncapital trials requires a retrial only as to punishment). Under *Youngblood*'s narrow definition of ex post facto, art. 44.29(b) does not offend the ex post facto prohibition in the Federal Constitution. I therefore agree with the majority's conclusion that *Youngblood* precludes appellant from relief under art. I, § 10 of the Federal Constitution.

## III. TEXAS CONSTITUTION

### A. Retroactive Legislation

Tex. Const. art. I, § 16 is worded differently than its federal counterpart. In addition to forbidding ex post facto laws, the Texas Constitution also prohibits "retroactive law."[3] Of course, we "can invalidate a Texas law under § 16 without regard to whether the United States Supreme Court would invalidate the same law under § 10 of Art. I (of the United States Constitution)." Braden, *The Constitution of the State of Texas: An Annotative and Comparitative Analysis* 59 (1977). See also *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967) (state courts are free to impose stricter standards than mandated by federal constitution).

The majority "assum[es]" without deciding that Article I, Section 16's proscription against retroactive law(s) is applicable to criminal cases. *Grimes*, slip op. at 9 (footnote omitted). In my view, the proscription against retroactive laws of art. I, § 16 is

---

The State Prosecuting Attorney's grounds for review state:
1) The Court of Appeals erred in remanding the case for a full trial.
2) The Court of Appeals erred in holding that Art. 44.29(b) as applied to appellant constituted an unconstitutional retroactive ex post facto law.

2. U.S. Const. art. I, § 10 provides in part that, "No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any title of Nobility."

3. Art. I, § 16 provides, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

not limited to civil matters. The Interpretive Commentary to art. I, § 16, with emphasis added, explains retroactive laws:

> The Texas Constitution goes further than the United States Constitution for the former is not confined to forbidding ex post facto laws, i.e., retroactive penal legislation, but *it also lays ban on any retroactive law.* In prohibiting retroactive laws, the Texas Constitution seeks to safeguard rights *not* guaranteed by other constitutional provisions such as the impairment of the obligation of contracts and due process of law clauses. *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249 (1887).

A retroactive law is one meant to act on things that are past. As such, a statute is retroactive which *takes away* or impairs *vested rights acquired under existing laws,* or creates new obligations, imposes new duties, or adopts a new disability in respect to transactions or considerations already past, and which affects acts or rights accruing before it came into force. *Turbeville v. Gowdy,* Civ.App., 272 S.W. 559 (1925).

In *Ex parte Alegria,* 464 S.W.2d 868 (Tex.Cr.App.1971), the Court addressed whether a statute increasing the minimum period served for parole eligibility violated both art. I, § 10 of the Federal Constitution and art. I, § 16 of the state constitution when applied retroactively to an inmate. Presiding Judge Onion, writing for an unanimous Court, concluded both constitutions were violated; in so doing, he cited the above quoted Interpretive Commentary to art. I, § 16.

Additionally, when this Court held that the Prison Management Act violated both the federal and state constitutional provisions, Judge Clinton, in concurrence, reiterated that art. I, § 16 is broader than the federal prohibition.

I write to point out that our own prohibition against such laws is broader than the restrictive construction given "ex post facto law." Under Article I, § 16 there is also a ban on any "retroactive law."

.    .    .    .    .

Including "retroactive law" in § 16 "evidences an intention to place a further restriction on the power of the legislature; and it must be held to protect *every right* [emphasis added] … which may accrue under existing laws prior to the passage of any, which, if permitted a retroactive effect, would take away that right. A right has been well defined to be a well-founded claim, and a well-founded claim means nothing more nor less than a claim recognized and secured by law." *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249, 253 (1887). See also *Turbeville v. Gowdy,* 272 S.W. 559, 561[4] (Tex.Civ.App.—Fort Worth 1925). *Ex parte Rutledge,* 741 S.W.2d 460, 463 (1987) (Clinton, J., joined by Miller and Duncan, JJ., concurring).

While the majority of the case law interpreting the retroactive law portion of art. I, § 16 concerns civil cases, that section also applies to criminal cases. *Rutledge,* 741 S.W.2d at 463; *Alegria,* 464 S.W.2d at 872; *Mellinger,* 3 S.W. at 253. Therefore, I believe the majority errs in suggesting that the retroactive law prohibition may not apply to criminal matters. It does apply to criminal matters, and this Court has never interpreted the article to the contrary.[4]

Further, I believe the majority opinion applies art. 44.29(b) in such a manner as to deprive appellant of a vested right acquired at the time of his trial. Therefore, this application art. 44.29(b) is a retroactive law prohibited by Art. I, § 16 of our Constitution.

## B. Procedural Matters

The majority opinion contends that the retroactive law prohibition in art. I, § 16 "has never been made applicable to stat-

---

**4.** The majority opinion cites Cooley, *A Treatise on Constitutional Limitations,* 773 n. 1 (8th ed. 1927) for the proposition that the retroactive law language in art. I, § 16 does not apply to criminal cases. *Grimes,* slip op. at 9 n. 6. Interestingly, the United States Supreme Court has noted that Professor Cooley's nineteenth century treatise contributed to the "confusion into the interpretation of the Ex Post Facto Clause." *Youngblood,* —— U.S. at ——, 110 S.Ct. at 2715.

utes merely affecting matters of procedure which do not disturb vested, substantive rights." *Grimes*, slip op. at 9–10, citing *Ex parte Abell*, 613 S.W.2d 255 (Tex.1981); *Merchant's Fast Motor Lines, Inc. v. Railway Commission of Texas*, 573 S.W.2d 502, 503 (Tex.1978). Those cases, and the cases cited therein, discuss what constitutes "vested substantive rights" in the civil context. *Ex parte Abell*, 613 S.W.2d at 260–261, contains a list of cases wherein no vested substantive right has been found. Such situations include authorization of additional remedy for collecting past-due child support, repeal prior to filing suit of statute granting statutory cause of action, change in municipal annexation law, change in city ordinance reducing salary of city employee and change in worker's compensation statute for determining average weekly wage. While those cases find no vested substantive right, they clearly do not control what is a "right" in a criminal context.

It is well established that by simply labelling a law "procedural," a legislature does not thereby immunize it from scrutiny under art. I, § 10 of the Federal Constitution. *Youngblood*, ── U.S. at ──, 110 S.Ct. at 2721; *Gibson v. Mississippi*, 162 U.S. 565, 590, 16 S.Ct. 904, 910, 40 L.Ed. 1075 (1896). Nor should a procedural label preclude our analysis of the statute's constitutionality under art. I, § 16's proscription of retroactive laws. Consistent with the federal constitutional analysis, whether a procedural change has a sufficiently drastic impact on a defendant should be characterized as "substantial" for purposes of art. I, § 16, is a matter of degree. *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925).

Clearly, the majority opinion affects a substantial right in contravention of art. I, § 16. As stated earlier, a right under art. I, § 16 has been defined as a well-founded claim; a well-founded claim means nothing more nor less than a claim recognized and secured by law. *Ex parte Rutledge*, 741 S.W.2d at 463, citing *Mellinger*, 68 Tex. at 45, 3 S.W. at 253.

At the time appellant elected to have the jury assess his punishment, he had a right to an entirely new trial if harmful error occurred at the punishment phase of his trial. Prior to trial, appellant had to evaluate the relative merits of the judge or jury assessing punishment. During this evaluation, appellant and his counsel undoubtedly considered the effects of error before a jury—a new trial on the merits. For cases where the judge assesses punishment, appellate courts either treat the error as presumptively disregarded or remand the cause for the trial court to reassess punishment. *Tolbert v. State*, 743 S.W.2d 631 (Tex.Cr.App.1988) and cases cited therein.

Under the circumstances of the instant case, appellant would not have been entitled to any relief if he had elected to have the court assess punishment. See *Miffleton v. State*, 777 S.W.2d 76, 82 (Tex.Cr.App.1989). Thus, even if appellant and his counsel had perceived the trial court as more lenient than the jury, appellant relied upon the law in effect at the time of his trial (error at the punishment phase before a jury would entitle him to an entirely new trial). Simply put, had appellant known that error in the punishment phase would have resulted in a retrial on punishment only, his initial decision regarding punishment by the jury may have been different.

This is not to say that every procedural rule affects a substantial right. For example, in *Ex parte Johnson*, 697 S.W.2d 605 (Tex.Cr.App.1985), a plurality of this Court held that art. I, § 16 was not offended by the retroactive application of Tex.Code Crim.Proc.Ann. art. 37.10(b) (reformation on appeal of judgments with unlawful punishments, rather than remanding for new trial). However, the right affected in *Ex parte Johnson* does not embrace a law relied upon when making strategy decisions. See also *Youngblood v. Collins*, ── U.S. ──, 110 S.Ct. 2715.

Article 44.29(b) came into effect *after* appellant and his counsel made the punishment election. Retroactive application of art. 44.29(b) undoubtedly works to the detriment of appellant, not merely by removing a right to which he was entitled at the

time of trial, but also by removing a right upon which he likely relied in making trial strategy decisions. Therefore, it is implausible to conclude that retroactive application of art. 44.29(b) does not affect a substantial right for purposes of art. I, § 16.

### C. Prospective Operation

The majority opinion also states that "a defendant has no vested right to an entirely new trial when errors relating only to the assessment of his punishment are committed. See *Ex parte Johnson*, 697 S.W.2d 605 (Tex.Cr.App.1985) (statutory amendment providing for reformation on appeal of judgments with unlawful punishments, rather than remanding for new trial, held applicable to all cases pending on appeal at the time of amendment)." *Grimes*, slip op. at 10. In my judgment, the majority fails to recognize that the retroactive application of art. 37.10(b) does not involve a strategy decision, as does art. 44.29(b).

Moreover, the precedential force of *Ex parte Johnson* is questionable. First, it is a plurality opinion. Second, as stated above, the retroactive application of reforming a judgment on appeal affects a less substantial right; that is, it does not involve a law relied upon to make a strategy decision. Third, *Ex parte Johnson* is limited by the language employed therein: "Thus, *in the absence of express legislative intent to the contrary*, the new law controls litigation from its effective date and applies to both pending and future actions." *Ex parte Johnson*, 697 S.W.2d at 607–608 (footnote omitted) (emphasis added). The statute at issue in *Ex parte Johnson*, art. 37.10(b), which became effective June 11, 1985, is devoid of any language as to whether the amendment shall apply to cases tried or indicted after a particular date.

*After* the effective date of art. 37.10(b), the legislature passed Tex.Gov't Code Ann. § 311.022 (effective October 1, 1985), which provides that, "A statute *is presumed to be prospective* in its operation unless expressly made retrospective." (Emphasis added.)

Art. 44.29 was enacted *after* § 311.022, and thus it is subject to § 311.022's prospective application.

Retrospective laws are commonly regarded with disfavor, *Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487 (1943), and statutes generally are not be to applied retroactively. *Ex parte Abahosh*, 561 S.W.2d 202, 204 (Tex.Cr.App.1978); *Ridyolph v. State*, 545 S.W.2d 784 (Tex.Cr. App.1977).

Lastly, the majority opinion also errs in its construction of § 311.022, where it "discerns no conflict" between § 311.022 and the application of art. 44.29 to the case at bar because art. 44.29 "will be applied prospectively in the trial courts after the causes have been remanded." *Grimes*, slip op. at 11 n. 9. That argument is essentially a *non sequitur*. That construction of § 311.022 overlooks the obvious: Article 44.29 concerns an act occurring in the future, namely, procedure on *re* trial; simply because it concerns a future event does not mean that the procedural mechanism can be applied retroactively to cases tried before its effective date. The article is not prospective for purposes of § 311.022.

Such a construction is inconsistent with the plain language of § 311.022, that a statute is presumed to be prospective in its operation *unless expressly made retrospective*. Article 44.29 is not expressly retrospective; therefore, it is presumed to apply prospectively. Clearly, § 311.022 is required to be read in compliance with art. I, § 16's prohibition against "retroactive law". Tex.Gov't Code Ann. § 311.021(1).

### IV. CONCLUSION

For these reasons, I respectfully dissent to the majority opinion.