

NUMBER 13-11-00566-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RANDY KAIZER,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

## On appeal from the 28th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

By eight issues, which we re-number as four, appellant, Randy Kaizer, appeals his conviction for one count of continuous sexual abuse of a young child, *see* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2011); one count of indecency with a child, *see id.* § 21.11 (West 2011); and two counts of aggravated sexual assault of a child, *see id.* § 22.021 (West Supp. 2011). We affirm.

# I.    BACKGROUND

A Nueces County grand jury indicted Kaizer on fourteen separate counts[1] of crimes against a child, V.M., including:   continuous sexual abuse of a young child, *see id.* § 21.02; aggravated sexual assault of a child, *see id.* § 22.021; and indecency with a child, *see id.* § 21.11.   Kaizer pleaded not guilty, and the following evidence was presented at Kaizer's trial by jury.

In the late 1990s, Kaizer and M.M. entered into a serious dating relationship in Corpus Christi, Texas.   When the couple met, M.M. had one child, V.M., who was eighteen-months old.   Kaizer had four children from previous marriages.   Kaizer and M.M. lived together along with V.M. during the duration of their 10-year relationship, but never married.   In the summer of 2008, Kaizer and M.M. stopped dating.   Kaizer moved out and relocated to Mississippi, while M.M. continued to live in Corpus Christi with V.M.

In March 2010, M.M. and V.M. verbally argued about a social media account that V.M. created on the family's computer.   After the argument, V.M. began to cry after M.M. told her that she "didn't know her anymore."   Over tears, V.M. told her mother that Kaizer had raped her.

Corpus Christi Police detective Brandi Moss eventually intervened to file an outcry report.   At that time, V.M. was referred to Driscoll Children's Hospital for a medical examination and taken to the Children's Advocacy Center to undergo a forensic interview regarding the alleged abuse.

---

[1] The State eventually dismissed Counts Five through Fourteen during the guilt-innocence phase of trial.

At trial, V.M. testified that Kaizer's abuse began when she was "about five or six." She stated that she and Kaizer were frequently alone at home after school because M.M. was at work. During this time, Kaizer started to touch her underneath her shirt as they sat on the couch together. V.M. said that the same touching would take place "over and over again" until within months the site of the touching moved from the couch to the bedroom. V.M. testified that the touching continued in the bedroom, but Kaizer began to take off his own clothes. Over time, V.M. stated that Kaizer made her take her clothes off, then took his own clothes off, and touched her "private areas"[2] with his hands and penis. V.M. testified that Kaizer told her not to tell M.M. and would buy her candy before he would touch her.

V.M. stated that the touching eventually led to "constant intercourse" with Kaizer inserting his penis inside of her vagina. When asked by the State's prosecutor how many times Kaizer had intercourse with her, V.M. replied, "too many to count." V.M. stated that Kaizer used a condom when they would have intercourse. V.M. recalled one instance in which Kaizer made her put her mouth on his penis and suck while he ejaculated in her mouth. V.M. told jurors that Kaizer described their relationship with each other as "something special" and that he "would never regret it." V.M. testified that the abuse lasted from age six until age eleven when Kaizer and M.M. ended their relationship. V.M. testified that she did not tell her mom about the abuse while it took place because she was afraid and embarrassed to have other people know about it.

Kaizer's daughter, J.K., and son, C.K., testified in his defense. Kaizer did not testify. J.K. stated that from 2005 to 2007, she lived with her mother in the Rio Grande

---

[2] V.M. described her "private areas" as her vaginal area.

3

Valley and visited Kaizer in Corpus Christi each July. J.K. described her relationship with V.M., who is younger than her, as one of a big sister. J.K. denied witnessing any abuse taking place between Kaizer and V.M. and stated that she wished she had the relationship with Kaizer that he shared with V.M. C.K., who was twenty-two years-old at the time of trial, stated that he also visited Kaizer each summer in Corpus Christi from the time that he was a baby until he turned fourteen years old. C.K. described V.M. during that time as "always happy" and stated that it was impossible that Kaizer abused V.M. while he was there.

The jury returned a guilty verdict on counts one (continuous sexual abuse of a young child), two (indecency with a child), three, and four (aggravated sexual assault of a child). The trial court sentenced Kaizer to sixty years' imprisonment for counts one, three, and four and twenty years' imprisonment for count two, to run concurrently in the Texas Department of Criminal Justice—Institutional Division. This appeal ensued.

## II. EX-POST FACTO VIOLATION

By his first issue, Kaizer asserts that his conviction under count one (continuous sexual abuse of a young child) of the State's indictment is in violation of the *ex post facto* clauses of the Texas and United States Constitutions.

### A. Applicable Law and Standard of Review

Texas has long prohibited the making of *ex post facto* legislation and has followed the United States Supreme Court's guidance on the similar provision found in the federal constitution. *See Grimes v. State*, 807 S.W.2d 582, 586 (Tex. Crim. App. 1991) (en banc) (referencing TEX. CONST. art. I, § 16); *see also* U.S. CONST. art. I § 9, cl. 3. The prohibition as to *ex post facto* laws has been held to extend to a law which makes an act

4

done before its passage, and which was innocent when done, criminal; or which aggravates a crime and makes it greater than when committed; or which changes a punishment and inflicts a greater punishment than the law annexed to the crime when committed; or which alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender. *Grimes*, 807 S.W.2d at 586 (citing *Holt v. State*, 2 Tex. 363 (1847)); *see Collins v. Youngblood*, 497 U.S. 37, 42 (1990).

Thus, when a court engages in *ex post facto* analysis, it should be concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place at the time the act occurred, and it is irrelevant whether the statutory change touches any vested rights. *Grimes*, 807 S.W.2d at 587; *see Weaver v. Graham*, 450 U.S. 24, 29 (1981) (explaining that "two critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.").

**B.    Discussion**

Kaizer argues that his conviction under count one amounted to *ex post facto* violations because he was convicted for acts that were pleaded by the State in counts three and four that were to have occurred before the law underlying count one was enacted on September 1, 2007. *See* TEX. PENAL CODE ANN. § 21.02 (effective date September 1, 2007). We disagree.

The State alleged under count one of its 2010 indictment that Kaizer committed the alleged acts under section 21.02 on or about September 15, 2007 through August

5

15, 2008, which are separate allegations from those in counts three and four under penal code section 22.021. The State alleged under counts three and four acts that took place on or about September 16, 2006. Accordingly, we conclude that Kaizer failed to sufficiently establish an *ex post facto* violation under the Texas or United States constitutions. *See generally Grimes*, 807 S.W.2d at 587. Kaizer's first issue is overruled.

### III. ADMISSIBILITY OF EXPERT TESTIMONY

By his second issue, Kaizer contends that the trial court erred when it allowed testimony from an expert nurse witness over his evidentiary objections.

### A. Standard of Review

We review a trial court's ruling on admissibility of expert testimony for an abuse of discretion. *See Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006) (providing that "the standard of review for a trial court's ruling under the Rules of Evidence is abuse of discretion"); *Burke v. State*, 371 S.W.3d 252, 258 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd). If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment. *Page*, 213 S.W.3d at 337. Appellate courts will uphold a trial court's ruling on the admissibility of evidence as long as the trial court's ruling was at least within the "zone of reasonable disagreement." *Id.*; *see Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

### B. Discussion

Kaizer essentially made two evidentiary objections prior to the trial court's admission of testimony from Driscoll Children's Hospital sexual assault nurse examiner

6

(SANE), Elizabeth Williams. The first questioned the relevance of Williams's testimony because Williams's examination of V.M. took place two years after the last alleged act of abuse. Kaizer argued further to the trial court that Williams's testimony would simply bolster V.M.'s testimony. The State responded that Williams's testimony was necessary to refute Kaizer's allusions, questions, and theories about why V.M. did not show any trauma related to these alleged acts of abuse. Evidence is relevant and admissible if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* TEX. R. EVID. 401, 402. Bolstering occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993). Based upon our review of the record, the trial court was within the zone of reasonable disagreement and did not abuse its discretion in overruling Kaizer's first objection to Williams's testimony—particularly in light of the State's stated purpose to refute Kaizer's questioning of other witnesses about the absence of trauma or physical evidence to establish that the alleged acts occurred.[3]

Kaizer next objected that Williams's testimony was unreliable. *See* TEX. R. EVID. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."). Specifically, Kaizer argued that the subject of Williams's

---

[3] Elizabeth Williams testified that she did not anticipate finding any trauma since two years had elapsed since V.M.'s last alleged assault. Williams also testified that a myth exists about tearing open the skin covering a virgin female's hymen during sexual intercourse, to which she referred to as the "cherry myth."

testimony related to V.M. was "not reliable" and "not credible."

Reliability depends upon whether the evidence has its basis in sound scientific methodology and demands a certain technical showing. *See Vela v. State*, 209 S.W.3d 128, 133 (Tex. Crim. App. 2006). In order to be reliable, (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question. *Id.* In its role as gatekeeper, a trial court's reliability inquiry is a flexible one. *Id.* Sometimes reliability of scientific knowledge is at issue, and other times, it may focus upon personal knowledge or experience. *Id.* In either situation, the proponent must establish some foundation for the reliability of an expert's opinion. *Id.*

In response to this objection, the State argued that Williams's testimony involves her capacity as a SANE with Driscoll Children's Hospital, where she has conducted more than 2,000 forensic examinations on children. The State further argued that Kaizer's arguments about questioning the purpose and time-frame of administering V.M.'s SANE examination were better left for cross-examination, rather than a challenge to the reliability of her testimony. Accordingly, we conclude that the trial court did not abuse its discretion in overruling Kazier's reliability objection because the ruling was within the zone of reasonable disagreement to support that the State established a foundation of the reliability of Williams's testimony, *see Vela*, 209 S.W.3d at 133, and further, Kaizer's objections were better reserved for cross-examination rather an admissibility challenge.

Kaizer's second issue is overruled.

## IV.    PROSECUTOR'S COMMENTS

By his third issue, Kaizer asserts that the trial court erred when it overruled his objection to the State's comment on his right to silence during the prosecutor's closing arguments.

## A.      Applicable Law and Standard of Review

Texas law states that any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.   TEX. CODE CRIM. PROC. ANN. art. 38.08 (West 2005);   *see Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) ("It is settled law that neither the trial judge nor the prosecution may comment on the defendant's failure to testify, and that any such comment violates the Fifth Amendment privilege against self-incrimination.").

> To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear.   It is not sufficient that the language might be construed as an implied or indirect allusion.   The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify.   In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.

*Id.* (citing *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001)); *see Cook v. State*, 702 S.W.2d 597, 599 (Tex. Crim. App. 1984).

## B.      Discussion

Kaizer's complaint revolves around the following exchange during the State's closing arguments:

[PROSECUTOR]:          Now, I want to talk to you a little about the testimony you heard.   I think it is really easy

9

> for someone's child to come up here and say, there is no way that this could have happened. There is just no way. But what I want you to ask yourselves is how would they know. How would [C.K.] know there was no way if the last time he saw her she was six, maybe seven. He doesn't know ladies and gentlemen. The truth of the matter is nobody knows. And you made a promise during jury selection that you would tell the truth. That you would be honest in your responses. And that's why I asked you those questions. That's why I asked you, if I give you one witness and you believe her, can you come back with a guilty verdict? Because even though we called more than one witness to the stand, I could have called 100 witnesses, but nobody else knows. [V.M.] knows and [Kaizer] knows.

[DEFENSE COUNSEL]:  Judge, I'm going to object. That's an imprint of my client's inability or not ability to testify, that is improper.

[PROSECUTOR]:  That is not an indication of whether or not he is testifying. I am saying there are only two people that would ever really know what happened.

[DEFENSE COUNSEL]:  Judge, that is improper. I am going to ask that the jury disregard that. I know what she is alluding to.

[TRIAL COURT]:  Overruled.

While this line of argument could be labeled as a comment on the evidence, we are not convinced that from the standpoint of the jury, it was manifestly intended or was of such a character for the jury to take it as a comment on Kaizer's failure to testify. *See generally Short v. State*, 671 S.W.2d 888, 892 (Tex. Crim. App. 1984) (en banc). Instead, the State's argument appears to counter earlier attacks made by Kaizer's counsel upon V.M. and other witnesses' testimony, as illustrated by the following

10

excerpt:

> [DEFENSE COUNSEL]: You know as I leaned over and put my hand on [Kazier], I can feel his heart pumping. Because he is scared that you are going to convict on the word of one individual with no proof. None. Nothing medically that they can tell you that [sic] any of this happened. He is scared that you are not going to believe his daughter. He is afraid that you're not going to believe his son. He is afraid. . . .If it leaves this gut impression in your gut that you say, I can't destroy this man's life, based upon the testimony and inconsistencies of this child, then you vote not guilty.

Accordingly, Kaizer's third issue is overruled.

## V. CONSTITUTIONAL AND PUBLIC POLICY CHALLENGES

By Kaizer's fourth issue, he asserts various constitutional challenges and one public policy challenge upon Texas Penal Code sections 21.01 and 21.02.[4]

### A. Constitutional

In his brief, Kaizer challenges the constitutionality of penal code sections 21.01 and 21.02 under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution. The State argues that all of these arguments are waived. We agree. A facial challenge to the constitutionality of a statute is a right that can be forfeited because statutes are presumed constitutional until it is determined otherwise. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (internal citations omitted). Here, Kaizer did not object to any statutes on any constitutional grounds at trial. Accordingly, error was not preserved and is treated as waived. *Id.*

---

[4] For clarity, we consolidate Issues Four through Eight. *See* TEX. R. APP. P. 47.1. In sum, Kaizer's original Issue Four deals with a Sixth Amendment challenge to section 21.02(c); Issue Five deals with a vagueness challenge to section 21.02; Issue Six asserts an Eighth Amendment challenge to second and third degree offenses under section 21.02(c)(1)–(6); Issue Seven challenges the burden of proof required under section 21.02(d); and finally, Issue Eight contests the policy justifications for section 21.02.

**B.     Public Policy**

Finally, Kaizer argues that penal code section 21.02 is "unnecessary" and "redundant" under Texas law because other related offenses "all carry harsh sentencing as convicted offenders must serve at least half of their sentence before becoming parole eligible."    As a result of this assertion, Kaizer argues for repeal of the law.    Kaizer cites to no authority which gives this Court the power to repeal a law based upon the arguments asserted in his brief.    *See* TEX. R. APP. P. 38.1(i).

Kaizer's final issue is overruled.

## VI.     CONCLUSION

We affirm the trial court's judgment of conviction.

 

 

 

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
13th day of June, 2013.