

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## AP-75,589

**JAMES  EUGENE BIGBY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON DIRECT APPEAL FROM
### CAUSE NO.  0329813D IN THE 3RD CRIMINAL JUDICIAL DISTRICT COURT
### TARRANT COUNTY

COCHRAN, J., *delivered the opinion of the unanimous Court.*

### O P I N I O N

Appellant was convicted in March of 1991 of capital murder.[1]  The evidence showed

that he had killed three friends (plus the infant son of one of them) because he believed that

they were conspiring with Frito-Lay to avoid paying him for a workers' compensation claim.

The jury answered the special issues affirmatively, and the trial court sentenced appellant to

---

[1]TEX. PENAL CODE ANN. § 19.03(a)(6) (West 1990).

death.[2]  Appellant's conviction and sentence were affirmed on direct appeal,[3] but his death

sentence was later vacated by the United States Court of Appeals for the Fifth Circuit.[4]

Appellant was retried on punishment and again sentenced to death.  This appeal follows.

After reviewing appellant's fifteen points of error, we find them to be without merit.

Consequently, we affirm the trial court's judgment and sentence of death.

In point of error one, appellant claims the trial court erred by overruling his challenge

for cause against venireperson Karen Seagroves.  He contends that Ms. Seagroves was

challengeable for cause because (1) she would vote to assess the death penalty if she believed

appellant acted deliberately, and (2) she did not believe there would be any mitigating

evidence that would justify a "yes" answer to the mitigation issue once capital murder was

proven.

During initial voir dire by the State, the prosecutor explained to Ms. Seagroves that

the proceeding would be for punishment only, that appellant had already been convicted of

capital murder, and that whether the death penalty would be imposed would be based on the

evidence presented.  Ms. Seagroves indicated that she understood, and agreed that she could

---

[2] TEX. CODE CRIM. PROC. ANN. art. 37.071(b) (West 1990). Unless otherwise indicated, all references to Articles refer to the Texas Code of Criminal Procedure.

[3] *Bigby v. State*, 892 S.W.2d 864 (Tex. Crim. App. 1994).

[4] *Bigby v. Dretke*, 402 F.3d 551 (5th Cir. 2005) (reversing death sentence based upon *Penry* claim that punishment-phase jury instructions prevented the jury from acting upon his mitigating evidence and remanding for a new trial on punishment).

follow the law and answer the questions. Ms. Seagroves continued to agree that she understood and could follow the law as the prosecutor explained the details and requirements for each of the special issues. She agreed that she would not automatically answer the deliberateness issue "yes," but would base the answer on the evidence presented. Ms. Seagroves maintained that she would also require the State to meet its burden on the future dangerousness issue. Finally, she indicated that she (1) understood the mitigation issue, (2) would follow the law and the instructions, and (3) would base her answer on the evidence.

Ms. Seagroves' position became less clear during defense counsel's voir dire. Appellant points to portions of Ms. Seagroves' discussion indicating that she would impose the death penalty once she determined that the accused had murdered two people deliberately and that he would be a future danger, regardless of what the mitigation evidence showed. When defense counsel challenged her, the trial judge said that he thought that Ms. Seagroves became somewhat confused, and he gave the State the opportunity to question her again. When re-questioned by the prosecutor, Ms. Seagroves agreed that "nothing is automatic," and that the jury's answers had to be based on the evidence presented. She agreed that she would require the State to prove the first two issues, would keep an open mind on the mitigation issue, and would not decide it until after hearing all of the evidence. She also stated that she was confused during voir dire by defense counsel when she said that she would automatically disregard mitigating evidence. Despite some of her statements made during questioning by defense counsel, Ms. Seagroves' voir dire as a whole reflects that she

would be fair, follow the law and the instructions, keep an open mind, and answer the issues based on the evidence presented. The trial court did not abuse its discretion in denying appellant's challenge for cause.[5] Point of error one is overruled.

In points of error two and three, appellant claims that the trial court erred by denying his challenges for cause against venirepersons Randolph Myers and George Davisson on the ground that they would each consider the cost of prison housing and overcrowding for someone in prison for life as valid factors in answering the special issues.

Appellant points to the following portion of Mr. Myers' voir dire:

[Defense counsel]. Well, that brings to mind – and if you feel this way, that's fine. If you don't that's fine.

Some people say, you know, because life in prison and the death penalty are the two options in a capital murder case, just because of my overall view of it, I am going to . . . consider[] the financial costs of housing this individual if we reach a life sentence because I know it's going to cost a considerable amount of money, and I'm just going to – as a citizen, I'm going to take that into account in answering these questions. Do you feel that way?

[Myers]. That would – again, that's my belief, and – and, you know, again, with no – nothing to – to process, I would say that would be a correct statement. . . . If there's circumstances there that I'm not aware of, again, I'm going to base it on the data I receive. . . . and I'm not saying by any means that there shouldn't be a life sentence even available, but I'm saying, that, you know, in a lot of instances I think we've gone – we've got too many of those, and therefore we've got overpopulated prisons and an issue that we've got to deal with, and it may not be the death penalty. It may be something else, but we've got an issue there. That's what I was trying to say –

---

[5] *See Russeau v. State*, 171 S.W.3d 871, 879-80 (Tex. Crim. App. 2005) (giving deference to trial court when prospective juror's answers are vacillating, unclear, or contradictory).

Q. Well, I don't – I didn't think you're telling me you would vote the death penalty strictly only because it costs money, more money to house people for life, but I think what you probably said here, it would be a factor in your decision-making in answering these questions.

A. Absolutely.

Appellant challenged Mr. Myers for cause on the ground that he would factor into his answers on the special issues the cost of the prison system and housing inmates. The prosecutor argued that Mr. Myers had never been told that consideration of those costs was improper, and, therefore, he could not be challenged for cause on those grounds. The trial court overruled appellant's challenge for cause.

Appellant points to the following portion of Mr. Davisson's voir dire as evidence that he was unconstitutionally biased:

[Defense counsel]. Because one – one reason I ask you about this, you said someone has to support that life, and a lot of folks feel this way. They say, you know, life in the penitentiary, that costs money.

[Davisson]. It does.

Q. And some people have even seen stories or articles on what it costs to house someone in prison.

A. Something like $32,000 a year. I mean, I can't lie to you, sometimes I resent that fact.

Q. Well, I mean, that's fine because you're a taxpayer and – and that's money – money you contribute with your check, you know, every time you get paid and so forth.

Some people feel this way. They say, well, look, because it does cost, it's not a cheap proposition to confine somebody in prison for life, that they

would factor into their judgment in answering these questions –

A.  But the payoff is, is that sometimes it's better to pay to keep that person out of society than it is to. . . give them an early release.

Q.  Okay.  All right.

I just want to see if you share this view because we have had some people tell us, well, look because of my dislike of the cost of this life-in-prison deal, because it is so expensive and I've got to help foot the bill, that I am going to factor that in the answers of these questions that we've been going over at least some.

A.  Okay.

Q.  Do you feel that way?

A.  It might be factored in some.

Q.  Okay.  Because the – the law expects jurors not to do that.

A.  Right.  I know.

Q.  It says, we don't want to decide whether someone lives or dies based on a dollar-and-cents question.  We don't want jurors doing that.  We want them to answer these questions based on evidence and not factor in, well, if we go ahead and execute him, we don't have to pay all this money.

A.  Right.

Q.  Some people say, I'm not sure I could do that.  I'd probably factor it in some.

Do you feel that way?

A.  Perhaps.  I mean, you asked for honesty.

Q.  No – and that's exactly what I want you to do.  I think you held your hand up about an inch indicating –

A. It's like I said, I mean, you know, you have to make investments to mitigate risks every day. I mean, that's why some of us have alarms on our homes, and, you know, putting someone in prison for life, that would be an investment in mitigating risk for their future actions in society.

Q. I think you held up your fingers with an inch gap. Was that indicating that you would factor it into the answers of the questions, but it would be a small –

A. Yes.

Q. – one-inch of whatever length we're talking about?

A. Right.

The trial court overruled appellant's challenge against Mr. Davisson for cause, stating that although Mr. Davisson indicated that the cost issue "might come into play," he testified that he could base his answers on the evidence.

"A defendant may properly challenge for cause a prospective juror who has a bias or prejudice against any phase of the law upon which he is entitled to rely."[6] When reviewing a grant or denial of a challenge for cause, we look at the entire record to determine if there is sufficient evidence to support the ruling.[7] "The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with the law."[8] Before a venireperson can be excused for cause on this basis, the

---

[6] *Sells v. State*, 121 S.W.3d 748, 758-59 (Tex. Crim. App. 2003).

[7] *Id.* at 759.

[8] *Id.*

law must be explained to him and he must be asked whether he could follow that law regardless of his personal views.[9] The proponent of a challenge for cause only meets his burden of establishing that the challenge is proper only if he shows that the venireperson understood the requirements of the law and could not overcome his prejudice well enough to follow it.[10]

The trial court did not abuse its discretion in overruling the challenge to Mr. Myers because the law was never explained to him and he was never asked whether he could put aside his personal views despite the law. And although Mr. Davisson was told that "the law expects jurors not to" consider costs associated with housing inmates, he was never asked whether he would be able to put aside his personal views and follow that law. Viewing Mr. Davisson's entire voir dire and his demeanor in answering the questions, the trial court determined that Mr. Davisson would not be "substantially impaired" in his ability to follow the instructions and answer the issues based solely on the evidence presented. On this record, appellant has not met his burden of showing that Mr. Davisson would not be able to overcome his prejudice and follow the law. Points of error two and three are overruled.

In his fourth point of error, appellant claims that the trial court erred in overruling his motion to quash paragraphs one, two, and three of the indictment. We conclude that the trial court had no authority to consider a motion to quash the indictment during a punishment

[9] *Id.*

[10] *Id.*

retrial. When an appellate court remands a case to the trial court for a retrial on punishment only, the appellate court has affirmed the guilt portion of the trial; thus, the trial court no longer has any authority over that guilt portion of the trial and no authority to consider any claim that relates to that portion of the trial.[11] The Fifth Circuit affirmed appellant's conviction and vacated and remanded only on his sentence.[12] The trial court's authority was limited to that granted to it on remand. Issues relating to the guilt phase of trial were not before the trial court on remand for a punishment retrial. Point of error four is overruled.

In point of error five, appellant claims that the trial court erred in sustaining the State's hearsay and relevance objections to testimony relating to information contained on a police "wanted person" data form indicating that appellant was believed to have a history of psychological disorders. A general understanding of the facts of the offense is necessary for analysis of this issue.

In 1987, appellant filed a workers' compensation lawsuit against Frito-Lay. Appellant believed Frito-Lay and its insurance company were conspiring against him to avoid paying his claim. He also believed that the insurance company and others, including friends, were conspiring to kill him. Around 6:00 p.m. on the evening of December 23, 1987, appellant went to the home of his long-time friend, Michael Trekell, who was there caring for his infant son, Jayson. Appellant and Michael watched television as Michael began preparing

---

[11] *Lopez v. State*, 18 S.W.3d 637, 639-40 (Tex. Crim. App. 2000).

[12] *Bigby*, 402 F.3d at 575.

steaks that appellant had brought over. As Michael sat at the kitchen table, appellant shot him in the head. Appellant attempted to suffocate Jayson with cellophane, but, when that did not work quickly enough, he drowned the infant by forcing him face-down in a sink filled with water. Jayson's mother, Grace Kehler, returned home from work in the early morning hours to discover the bodies of both Michael and Jayson. Grace told police she remembered appellant once talking about killing a lot of people and going out in a blaze of glory. Grace also testified that she knew appellant had mental problems and that he had been hospitalized in a mental hospital more than once.

After leaving Michael's home, appellant went to the home of his friend Wesley Crane at about 11:45 p.m. The two sat in the kitchen and talked. Around 1:15 a.m., appellant told Wesley he thought someone was following him and asked Wesley to go on a drive with him to see who it was. During the drive, appellant told Wesley to pull over and then shot him in the head. Appellant left Wesley on the road and drove Wesley's truck to the home of another friend, Frank Johnson, around 3:20 a.m. When Frank Johnson answered the door, appellant shot him several times. Wesley Crane and Frank Johnson both died as a result of the gunshot wounds.

Police put out a broadcast for Wesley Crane's truck, and an extensive search began for appellant. He was found at a motel in Fort Worth on December 26, and a SWAT team and other officers surrounded the motel. Appellant eventually surrendered without incident and admitted to the murders. He stated that he killed his three friends because he thought

they had conspired with Frito-Lay against him to undermine his workers' compensation case. He said that he did not know why he killed Jayson.

Detective Curtis Brannan testified for the State that he was involved in the "manhunt" for appellant. He testified about the bulletins that were dispatched, describing appellant as potentially armed and dangerous. On cross-examination, appellant attempted to offer evidence that the "wanted person" data form regarding appellant also indicated that appellant was "thought to have [a] history of psychological disorders." Appellant offered the "wanted person" data form into evidence and argued that it was admissible because it was not offered for its truth and that it was also admissible as a business record or report under Rule of Evidence 803(8)(c). The State's hearsay objection was sustained.

Appellant now contends the "wanted person" data form was not inadmissible hearsay because it was not offered for the truth asserted, but was offered to establish a more complete picture of the context of the manhunt following the murders. Appellant argues that this was particularly important in light of the other notations on the form that appellant was "armed with unknown weapons" and "extremely dangerous." Appellant argues that this error was not harmless because, without this evidence, the jurors had an erroneous view of the manhunt, and it is possible "that their erroneous view of the manhunt led them to believe that police officials considered appellant dangerous with no mitigating circumstances to temper that danger, and that they too should adopt that view."

We need not decide whether the exclusion of this evidence was error because any

error in its exclusion was clearly harmless. Nonconstitutional error that does not affect a substantial right must be disregarded.[13] An error does not affect a substantial right if the reviewing court "has fair assurance that the error did not influence the jury, or had but a slight effect."[14] The jury at the punishment phase is charged with considering "all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty."

The jury was presented with evidence of appellant's paranoia and delusions, his hospitalizations for psychiatric treatment, his bizarre, violent, and out-of-control behavior, the circumstances surrounding the murders, various diagnoses of appellant for such mental illnesses as paranoid schizophrenia, anti-social personality, and other personality disorders, and appellant's drug use. Exclusion of the "wanted person" data form because it stated that appellant was "thought to have [a] history of psychological disorders" was insignificant in view of the other evidence before the jury of appellant's psychological instability. Moreover, the mindset of law enforcement during the manhunt had only tenuous, if any, relevance to the special issues. The possibility that the information on the data form might have caused the police to view appellant as somehow less dangerous at the time of the manhunt is purely speculative and of little relevance to the jury's own determination of the punishment issues.

_____

[13] TEX. R. APP. P. 44.2(b).

[14] *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Point of error five is overruled.

In his sixth point of error, appellant claims that the trial court erred in refusing his requested jury instruction requiring the jury to find that the aggravating circumstances outweighed the mitigating circumstances before returning a verdict requiring the imposition of the death penalty. Appellant contends his position is supported by *Apprendi v. New Jersey*,[15] *Ring v. Arizona*,[16] and *Blakeley v. Washington*,[17] which he claims require that the burden be placed on the State to prove a negative answer to the mitigation issue beyond a reasonable doubt. Appellant reasons that, because he could not have been assessed the death penalty without a negative finding on the third issue, the absence of mitigating circumstances is an element that must be proven. By not requiring proof beyond a reasonable doubt, he contends, the scheme violates the *Apprendi/Ring* line of cases and the Sixth and Fourteenth Amendments. We have repeatedly rejected assertions that the *Apprendi/Ring* cases compel application of a burden of proof on the mitigation issue.[18] Point of error six is overruled.

In points of error seven, eight, and nine, appellant claims that the trial court's submission of the mitigation issue and the rejection of his proposed mitigation issue violated

---

[15] 530 U.S. 466 (2000).

[16] 536 U.S. 584 (2002).

[17] 542 U.S. 296 (2004).

[18] *Roberts v. State*, 220 S.W.3d 521, 534 (Tex. Crim. App.), *cert. denied*, 128 S. Ct. 282 (2007); *Marshall v. State*, 210 S.W.3d 618, 626 (Tex. Crim. App. 2006), *cert. denied*, 128 S. Ct. 87 (2007).

the *ex post facto* prohibitions of the federal and state constitutions. When appellant committed this crime in 1987 (and at the time of his first punishment trial in March of 1991), there was no statutory mitigation issue. The statutory mitigation issue became law on September 1, 1991. The Fifth Circuit held that the jury instructions given at appellant's first punishment trial failed to allow jurors to give effect to appellant's mitigating evidence.[19] At the retrial on punishment, Article 37.0711 required submission of the statutory mitigation issue for offenses committed before September 1, 1991.[20] Appellant objected to the instructions as violating the prohibition against *ex post facto* laws and requested submission of his own proposed instructions which were based on the statutory mitigation factors applicable in federal death-penalty cases.[21] The trial court rejected appellant's objection and request and instructed the jury in accordance with Article 37.0711. Appellant contends that the application of Article 37.0711 violated *ex post facto* laws by altering the legal rules of evidence so as to receive less or different evidence than the law required at the time of the offense in order to convict (or here, to put to death) the offender.

In assessing an *ex post facto* claim, the relevant comparison is between the law as it existed at the time of the offense and the law that was applied at trial.

---

[19] *Bigby*, 402 F.3d at 572.

[20] Art. 37.0711 became law August 30, 1993.

[21] Appellant's requested instructions, which were based on statutory mitigation factors applicable in a federal death-penalty case, were not part of Texas law at the time of the offense, nor are they part of the law now. Therefore, they would not be a permissible manner in which to address the mitigation issue in Texas.

The instructions given under Article 37.0711 did not violate the prohibition against *ex post facto* laws. In 1987, when the offense was committed, there was no statutory mitigation issue. The death-penalty scheme as it existed at that time, with no statutory mitigation issue, was held by the United States Supreme Court to be constitutionally inadequate to allow the jury to consider and give effect to mitigating evidence.[22] The scheme that applied at appellant's punishment retrial has been held to provide the jury with an adequate vehicle to consider and give effect to mitigating evidence.[23] Thus, as the State points out in its brief, the statutory mitigation issue provided appellant with more, not less, protection than he would receive under the law as it existed at the time of the offense. The procedure leading to the jury's punishment verdict in appellant's retrial was constitutional, while the procedure in place at the time of the offense was not. "It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law."[24] Because appellant was

---

[22] *Tennard v. Dretke*, 542 U.S. 274 (2004); *Penry v. Lynaugh*, 492 U.S. 302 (1989); *see also Bigby*, 402 F.3d at 572. We assume without deciding that the *ex post facto* provisions would apply to a statute that was enacted to satisfy a judicially-recognized constitutional mandate. *See Rogers v. Tennessee*, 532 U.S. 451 (2001) (*ex post facto* clause does not apply to judiciary); *see also Ortiz v. State*, 93 S.W.3d 79, 90 (Tex. Crim. App. 2002) (*ex post facto* provisions in U.S. and state constitutions are directed at legislatures, not courts).

[23] *See McFarland v. State*, 928 S.W.2d 482, 521 (1996); *see also Prystash v. State*, 3 S.W.3d 522, 534 (Tex. Crim. App. 1999) (although mitigating evidence is statutorily defined as that evidence which "a juror might regard as reducing a defendant's moral blameworthiness," statutory mitigation instruction provides jury with vehicle to respond to broader range of mitigating evidence).

[24] *Dobbert v. Florida*, 432 U.S. 282, 294 (1977); *see also Weaver v. Graham*, 450 U.S. 24, 29 & n.13 (1981) (two critical elements must be present for *ex post facto* law: it must be retrospective and it must disadvantage the offender; *ex post facto* analysis is "concerned solely with
(continued...)

given greater procedural protections than he had under the previous law, there is no *ex post facto* violation under either constitution.[25] Appellant's contention that the Texas Constitution's *ex post facto* provision provides greater protection than its federal counterpart is based on its language that it applies to all "retroactive laws." Even if we were to recognize that our state constitutional provision provides greater protection in some circumstances, we decline to consider the issue in this context where appellant has been afforded greater constitutional protections under the current law than he was afforded under the previous provision. Points of error seven, eight, and nine are overruled.

In point of error ten, appellant claims that the trial court violated his due process rights by refusing his requested jury instruction which would require the jury to assume that, if sentenced to life imprisonment, appellant "will spend the rest of his natural life in prison." The trial court instructed the jury that it was "not to consider or discuss any possible action of the Board of Pardons and Paroles or of the Governor, or how long the Defendant would be required to serve a sentence of life imprisonment." Relying on *Simmons v. South*

---

[24](...continued)
whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred"); *Holt v. State*, 2 Tex. 363 (1847) (law at issue "does in no respect operate to the prejudice of the accused, and is not, therefore, an *ex post facto* law").

[25] *See Grimes v. State*, 807 S.W.2d 582, 586-87 (Tex. Crim. App. 1991) (adopting Supreme Court's definition of "*ex post facto*" and holding that it is to be used in interpreting same term found in Article I, section 16 of Texas Constitution).

*Carolina*,[26] appellant argues that the instruction given could have led the jury erroneously to believe that if it assessed a life sentence, "parole might operate to reduce the term of his confinement to an undetermined length of time at the whim of the Board of Pardons and Paroles." We have repeatedly rejected claims that *Simmons* compels an instruction informing the jury of the effect of the parole laws on a life sentence in which there is a possibility of parole.[27]   Point of error ten is overruled.

In point of error eleven, appellant claims that the mitigation issue is unconstitutional because it fails to place the burden of proof on the State regarding the aggravating evidence. Appellant contends that the defense has an implied burden to produce sufficient mitigation evidence to warrant a sentence of life imprisonment.  Appellant also complains that the statute places unfair, undue, and unconstitutional emphasis on the finding of the defendant's "moral culpability" which appellant says was already found by the jury at guilt.  Appellant concedes the existence of adverse authority on this matter, but contends that the issues merit the Court's reconsideration.  We are not persuaded to reconsider our precedent.[28]  Point of error eleven is overruled.

---

[26] 512 U.S. 154 (1994).

[27]  *Busby v. State*, 990 S.W.2d 263, 271-72 (Tex. Crim. App. 1999); *Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999); *Broxton v. State*, 909 S.W.2d 912, 919 (Tex. Crim. App. 1995). We are not presented here with the appropriateness of such an instruction when the sentence at issue is life without parole.

[28] *Druery v. State*, 225 S.W.3d 491, 508 (Tex. Crim. App.), *cert. denied*, 128 S. Ct. 627 (2007); *Marshall*, 210 S.W.3d at 626.

In point of error twelve, appellant claims that the trial court erred in overruling his motion to preclude the imposition of the death penalty on the ground that the indictment failed to contain allegations regarding the punishment special issues. Appellant concedes authority to the contrary but urges reconsideration. We decline to reconsider this precedent.[29] Point of error twelve is overruled.

In his thirteenth point of error, appellant claims that the trial court erred in failing to instruct jurors, as appellant requested, not to consider any answers and corresponding sentence by a previous jury in considering and answering the special issues in the punishment retrial. However, the trial court included an instruction in the jury charge identical to the one requested by appellant. Point of error thirteen is overruled.

In point of error fourteen, appellant claims that the trial court erred by refusing to instruct the jury that if a single juror holds out for a life sentence, the sentence would be life imprisonment by operation of law. Appellant contends the Texas scheme violates the principles underlying *Caldwell v. Mississippi*[30] and *Mills v. Maryland*.[31] This issue has been decided adversely to appellant.[32] Point of error fourteen is overruled.

---

[29] *Gallo v. State*, 239 S.W.3d 757, 779 (Tex. Crim. App. 2007), *cert. denied*, 76 U.S.L.W. 3635 (2008); *Joubert v. State*, 235 S.W.3d 729, 731-32 (Tex. Crim. App. 2007), *cert. denied*, 128 S. Ct. 1446 (2008); *Rayford v. State*, 125 S.W.3d 521, 533 (Tex. Crim. App. 2003).

[30] 472 U.S. 320 (1985).

[31] 486 U.S. 367 (1988).

[32] *Russeau*, 171 S.W.3d at 886; *Prystash*, 3 S.W.3d at 536-37.

In his fifteenth point of error, appellant contends that the use of pancuronium bromide in the chemical mix used for executions in Texas violates the Eighth Amendment to the United States Constitution. Appellant's execution is not imminent; therefore, the method in which it is currently carried out is not determinative of the way it will be administered at the time of appellant's execution.[33] Appellant's claim is not ripe for review. Point of error fifteen is overruled.

The judgment of the trial court is affirmed.

Delivered: October 8, 2008

Do not publish.

---

[33] *Gallo*, 239 S.W.3d at 780.