IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 1, 2008

Charles R. Fulbruge III
Clerk

No. 06-41196

BILLY RAY WALLACE

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before HIGGINBOTHAM, DAVIS, and SMITH, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:

Billy Ray Wallace was convicted of capital murder and was sentenced to life imprisonment on December 10, 1981. He was incarcerated in a Texas prison. The Texas parole rules changed between sentencing and when he became eligible for parole. He alleges that had the rules not changed, he would have received parole and that the rule change violated the Ex Post Facto Clause of the Constitution. Following state denial of relief, the district court denied his habeas petition. We granted his Certificate of Appealability.

I

Wallace was sentenced to life in 1981 and incarcerated in Tennessee Colony, Texas in the Coffield Unit. When Wallace was sentenced, the Texas Code of Criminal Procedure provided,

> In matters of parole and release to mandatory supervision, the board members and commissioners may act in panels comprised of three persons in each panel. The composition of the respective panels shall be designated by the board. A majority of each panel shall constitute a quorum for the transaction of its business, and its decisions shall be by a majority vote.[1]

When he became eligible for parole, the procedural requirements for parole were stricter, stating,

> To release on parole an inmate who was convicted of a capital felony . . . all members of the board must vote on the release on parole of the inmate, and at least two-thirds of the members must vote in favor of the release on parole. A member of the board may not vote on the release unless the member first receives a copy of a written report from the department on the probability that the inmate would commit an offense after being released on parole.[2]

Wallace alleges that the eighteen-member board denied him parole but that two of the board members with supervisory authority over Coffield inmates voted to approve parole for Wallace. If the panel had consisted of three members, he asserts, he would have obtained the majority vote required for parole under the 1981 rules.

Wallace first objected to the denial of parole before a state district court, filing a habeas writ and an amended writ. That court forwarded the writ to the Texas Court of Criminal Appeals, which denied the writ without a written order. Wallace filed for federal habeas relief on October 4, 2004. The district court

---

[1] TEX. CODE CRIM. PROC. ANN. art. 42.12 §14A(e) (West 1981).

[2] TEX. GOV'T CODE ANN. §508.046 (West 2001).

adopted a magistrate judge's recommended findings of fact and conclusions of law and denied relief. The court denied Wallace's Certificate of Appealability. He filed notice of appeal with this court, and we granted a Certificate of Appealability.

II

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996,[3] where a state court has rejected a petitioner's habeas claims, a federal court may grant habeas relief only where the state court decision

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[4]

Wallace contends that the state court's decision is contrary to or an unreasonable application of clearly established law. He argues that rules increasing the size of parole voting panels violate the Ex Post Facto Clause and that the state court's implicit finding that the rule would not retroactively increase the period of incarceration was an unreasonable application of the law.

We review the district court's decision de novo, applying the same standard of review that the district court applied.[5] A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule

---

[3] AEDPA applies because Wallace petitioned the district court on October 4, 2004. AEDPA went into effect on April 24, 1996. See Williams v. Cain, 125 F.3d 269, 273-74 (5th Cir. 1997); see also id. at 274 (holding that "the relevant date for determining the applicability of the AEDPA to habeas corpus petitions is the date that the actual habeas corpus petition is filed").

[4] 28 U.S.C. § 2254(d).

[5] Foster v. Johnson, 293 F.3d 766, 776 (5th Cir. 2002).

that contradicts the governing law set forth in [the Supreme Court's] cases."[6] "A state-court decision will also be contrary to . . . clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."[7] "A state-court decision involves an unreasonable application of [Supreme Court] precedent if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."[8]

Under the Ex Post Facto Clause, "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts."[9] A statute violates the Ex Post Facto Clause only if it retroactively "effects [a] change in the definition of respondent's crime"[10] or "increases the 'punishment' attached to respondent's crime."[11] Only the latter analysis applies to Wallace.

We are not persuaded that the district court erred in holding that the Texas Court of Criminal Appeals' denial of relief was not contrary to clearly established federal law or an unreasonable application of the law.

In Portley v. Grossman,[12] a criminal defendant pled guilty and served his sentence.[13] The Parole Commission released the defendant, but the Commission

---

[6] Williams v. Taylor, 529 U.S. 362, 405 (2000).

[7] Id. at 406.

[8] Id. at 407.

[9] Collins v. Youngblood, 497 U.S. 37, 43 (1990) (citing Beazell v. Ohio, 269 U.S. 167, 169-70 (1925)).

[10] Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 505 (1995).

[11] Id.

[12] 444 U.S. 1311 (1980).

[13] Id.

revoked his parole after a state court convicted him on two new offenses.[14] The Commission revoked his parole under new reparole guidelines not in existence when he was originally sentenced.[15] The Supreme Court held that there was no ex post facto violation because the guidelines in question operated "only to provide a framework for the Commission's exercise of its statutory discretion"[16]; the Commission's "determination to grant or deny parole was committed to agency discretion"[17] when the defendant was originally sentenced and when the Commission voted to revoke parole. The Court concluded that the guidelines "neither deprive[d] applicant of any pre-existing right nor enhance[d] the punishment imposed."[18]

Although Wallace objects to the state code rather than to agency guidelines, and the discretion granted to the board under the code varies from Portley's facts, similar reasoning applies. In 1981, the Texas code stated that the board members and commissioners "may act in panels comprised of three persons."[19] This language is discretionary and does not create any "pre-existing right" to release.[20] Because of the discretionary nature of the 1981 code, the 1995 code does not "produce[] a sufficient risk of increasing the measure of punishment attached to the covered crimes."[21] Although the question of whether

---

[14] Id.

[15] Id.

[16] Id. at 1312.

[17] Id. (quotations omitted).

[18] Id. at 1312-13.

[19] TEX. CODE CRIM. PROC. ANN. art. 42.12 §14A(e) (West 1981).

[20] Portley, 444 U.S. at 1312.

[21] Morales, 514 U.S. at 509.

a state court decisions is "contrary to" federal law turns on Supreme Court law,[22] the law of this circuit affirms how Portley and Morales apply to the Texas code and is worthy of discussion.

The 1981 code provided only that three-member (rather than eighteen-member) panels may vote on parole and release. "'Parole is not a right, but rather only an expectation that may be granted by the Commission.'"[23] As we held in Simpson v. Ortiz, "The Parole Commission determines a prisoner's suitability for parole, not his eligibility, for the latter is determined by the length of one's sentence."[24] While changes to parole eligibility could retroactively increase punishment, determinations of suitability for parole, as determined by an eighteen- or a three-person panel, are discretionary.

Simpson re-affirmed our holding in Sheary v. United States[25] that changes in Parole Commission guidelines on the suitability of parole do not violate the Ex Post Facto Clause.[26] This is consistent with Portley's holding that changes to discretionary parole guidelines do not have ex post facto implications.[27] Rules affecting eligibility for parole may violate the clause, but discretionary rules affecting suitability do not.[28] The rule at issue here addresses suitability, not eligibility, for parole. As discussed above, Tex. Government Code § 508.046 provides,

---

[22] See, e.g., Taylor, 529 U.S. at 405.

[23] Simpson v. Ortiz, 995 F.2d 606, 610 (5th Cir. 1993) (quoting Stroud v. United States Parole Commission, 668 F.2d 843, 847 (5th Cir.1982)).

[24] Id.

[25] 822 F.2d 556, 558 (5th Cir. 1987).

[26] 995 F.2d at 610 (citing Sheary, 822 F.2d at 558).

[27] 444 U.S. at 1312.

[28] Id.

> To release on parole an inmate who was convicted of a capital felony . . . all members of the board [of Pardons and Paroles] must vote on the release on parole of the inmate, and at least two-thirds of the members must vote in favor of the release on parole. A member of the board may not vote on the release unless the member first receives a copy of a written report from the department on the probability that the inmate would commit an offense after being released on parole.

In other words, once a prisoner is eligible for parole, the board votes on his suitability for parole. Simpson held that "[t]he Parole Commission determines a prisoner's suitability for parole, not his eligibility."[29] The code that Wallace contests addresses parole board decisionmaking; it relates directly to the Commission's determination of suitability for parole and does not have ex post facto implications.

The difference between the facts of this case and Portley, as well as our holdings in Sheary and Simpson, is that the parole provisions at issue in those cases were clearly "guidelines," whereas the Texas Government Code does not describe its rules as guidelines. Aside from the label, the rules are in all respects "guidelines," as they address voting procedures for the board's discretionary vote on the suitability of parole.

That said, parole board "discretion does not displace the Ex Post Facto Clause's protections."[30] Increasing the number of board members who must vote on parole may create more than a "speculative, attenuated risk of affecting a prisoner's actual term of confinement"[31] in certain circumstances, unlike changes

---

[29] Id.

[30] Garner v. Jones, 529 U.S. 244, 253 (2000).

[31] Morales, 514 U.S. at 508-09.

in the "frequency of parole suitability proceedings"[32] and other procedural guidelines affecting parole.

Although the 1981 and 1995 code language does not alone show a significant risk of increased confinement, a court must look to the specific facts of the case, if a claimant has presented such facts, to determine whether a new law produces a "sufficient risk"[33] of increased confinement. As the Supreme Court held in Garner v. Jones,

> When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.[34]

Wallace claims that the meeting minutes he presented to the state court showed that Brenolyn Rogers-Johnson and Sandy Walker – Board members who had supervisory control over Coffield Unit inmates – voted in favor of Wallace's parole. There is no indication from the state record, however, that Wallace produced evidence that these Board members voted on both panels or that they would have been assigned to the later panel if it were a three-person panel. Wallace produced only speculative evidence that the new rules produced a risk of increased confinement.
AFFIRMED.

---

[32] Garner, 529 U.S. at 251.

[33] Morales, 514 U.S. at 509.

[34] 529 U.S. at 255.