Opinion issued August 28, 2014



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00678-CV

———————————

**WILLIAM BARBE BISHOP, Appellant**

**V.**

**RISSIE OWENS AND CONRITH DAVIS, Appellees**

---

**On Appeal from the 412th Judicial District Court**
**Brazoria County, Texas**
**Trial Court Case No. 646341**

---

## MEMORANDUM OPINION

This appeal arises from a section 1983 suit for declaratory and injunctive relief by appellant William Barbe Bishop, a prisoner of the Texas Department of Criminal Justice, against appellees Rissie Owens and Conrith Davis of the Texas Board of Pardons and Paroles. Bishop claimed that when considering him for

parole, the Board has wrongly applied statutes and regulations that were adopted subsequent to his conviction. He argued that these statutes and regulations either did not apply to him by their terms or were being applied retroactively in violation of the ex post facto clauses of the Texas and federal constitutions. Owens and Davis successfully moved for traditional summary judgment. We affirm.

## Background

In 1987, Bishop pleaded guilty to aggravated theft; the court deferred adjudication and placed him on community supervision for three years. On August 14, 1989, Bishop committed aggravated sexual assault and aggravated robbery. The State moved to revoke community supervision on the 1987 aggravated theft, and Bishop was sentenced to imprisonment for 10 years. Bishop pleaded guilty to the later offenses of aggravated sexual assault and aggravated robbery and was sentenced to 30 years in prison, to commence upon the completion of his sentence for aggravated theft. As he has now completed his sentence for aggravated theft, Bishop's current incarceration stems from the aggravated robbery and aggravated sexual assault he committed August 14, 1989.

Bishop first became eligible for parole in 1997. Since that time, the Board of Pardons and Paroles has reviewed Bishop's case and denied him parole on several occasions. However, in March 2004 the Board voted to parole Bishop contingent upon completion of a prerelease program for sex offenders. Although Bishop

2

completed this program, upon receipt of additional information the Board reversed its decision in October 2004. The Board has since reviewed Bishop for parole at three-year intervals and denied release each time.

In August 2011, proceeding pro se, Bishop sued Owens and Davis in both their official and individual capacities. He contended that the Board has been incorrectly applying statues and regulations adopted after his 1989 offense in reviewing him for parole. He prayed for a declaratory judgment and injunction but did not seek damages.

During the course of litigation, Bishop filed several motions to compel and motions for sanctions alleging that Owens and Davis were not complying with his discovery requests. The trial court made several attempts to schedule telephone conferences to consider the motions. However, the hearings were repeatedly reset and ultimately consolidated with a summary-judgment hearing. The court never ruled on the discovery motions.

Owens and Davis moved for traditional summary judgment. The trial court initially entered an order denying the motion. Bishop then filed a motion for traditional summary judgment, and Owens and Davis filed a motion to reconsider their motion.

The trial court granted the motion to reconsider and entered summary judgment in favor of Owens and Davis. The court also denied Bishop's motion for

summary judgment. Bishop filed a motion for new trial and a motion to reopen discovery, both of which the trial court denied. Bishop then timely filed notice of appeal.

## Analysis

Bishop, continuing to act pro se, argues that the trial court erred by granting summary judgment for Owens and Davis and by denying his motion for summary judgment. His arguments address multiple statutory provisions and administrative regulations that he contends the Board has incorrectly applied to him. In each case, he contends that the Board has either violated the ex post facto clauses of the Texas and federal constitutions or has failed to heed words of limitation in the statute itself.

Traditional summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant has the burden of showing that no genuine issue of material fact exists and that it is therefore entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). "When a trial court's order granting summary judgment does not specify the grounds relied upon, the

4

reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

"When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented." *Id.* "The reviewing court should render the judgment that the trial court should have rendered." *Id.*

In this state, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16. The federal constitution provides, "No Bill of Attainder or ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3.

Texas courts have adopted the same definition of the ex post facto provision found in the Texas Constitution that the United States Supreme Court has used to interpret the ex post facto clause of the federal constitution. *See Grimes v. State*, 807 S.W.2d 582, 586 (Tex. Crim. App. 1991) (citing *Collins v. Youngblood*, 497 U.S. 37, 110 S. Ct. 2715 (1990)). Thus, Texas courts apply the following formulation to determine whether a law is barred as ex post facto:

> [A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one

5

charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

*Collins*, 497 U.S. at 42, 110 S. Ct. at 2719 (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S. Ct. 68, 68–69 (1925)).

In some cases, retroactive changes in parole laws may violate the ex post facto clause. *Garner v. Jones*, 529 U.S. 244, 250, 120 S. Ct. 1362, 1367 (2000); *Ex parte Alegria*, 464 S.W.2d 868, 874 (Tex. Crim. App. 1971). The controlling inquiry is whether retroactive application of the parole law at issue creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Garner*, 529 U.S. at 250, 120 S. Ct. at 1367; *accord Johnson v. State*, 930 S.W.2d 589, 591 (Tex. Crim. App. 1996). "A statutory amendment that creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment does not violate the Ex Post Facto Clause." *Johnson*, 930 S.W.2d at 591*; accord Cal. Dep't of Corrs. v. Morales*, 514 U.S. 499, 509, 115 S. Ct. 1597, 1603 (1995).

In addition to proscribing ex post facto laws as the federal constitution does, the Texas Constitution also contains a general prohibition on retroactive laws. *See Ex parte Johnson*, 697 S.W.2d 605, 610 (Tex. Crim. App. 1985); *see also Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 137–38 (Tex. 2010) (explaining that constitutional prohibitions on ex post facto laws concern penal legislation while the Texas Constitution's ban on retroactive laws is a general

proscription). To the extent the ex post facto provision of the Texas Constitution is limited to penal laws, however, that does not necessarily mean that the retroactive law provision does not apply in a criminal context. The Court of Criminal Appeals has reserved judgment on whether the retroactive law provision applies to criminal cases. *See Grimes*, 807 S.W.2d at 587 (assuming without deciding that the retroactive law provision applied to the case before the court). The court noted, however, that the ban on retroactive laws has "never been made applicable to statutes merely affecting matters of procedure which do not disturb vested, substantive rights." *Id.*; *see also Holder v. Wood*, 714 S.W.2d 318, 319 (Tex. 1986) ("Laws may not operate retroactively to deprive or impair vested substantive rights acquired under existing laws. However, changes in statutes affecting remedies or procedure may be applied retroactively." (citations omitted)).

## I.     Former mandatory language governing parole decision

In his first two issues, Bishop argues that the Board has incorrectly applied discretionary standards of release established under the current Texas Government and Administrative Codes that conflict with the mandatory standards of release in effect at the time of his offense.

Under current law, the statutory provisions governing the Board of Pardons and Paroles are located in chapter 508 of the Texas Government Code. At the time of Bishop's offense, these provisions were located in article 42.18 of the Code of

Criminal Procedure. *See* Act of June 11, 1985, 69th Leg., R.S., ch. 427, § 2, 1985 Tex. Gen. Laws 1531, 1549 (adding article 42.18 to Code).

In 1987, the 70th Legislature passed Senate Bill No. 341, which amended section 8 of article 42.18 and added the mandatory language on which Bishop relies. Act of June 19, 1987, 70th Leg., R.S., ch. 1101, § 7, 1987 Tex. Gen. Laws, 3750, 3754–60. S.B. 341 provided:

> The board *shall* release a person on parole during the tentative parole month established for the person unless the board determines that the person's release will increase the likelihood of harm to the public or that the person has failed to progress in the manner required by the board . . . .

*Id.* § 7, at 3754 (emphasis supplied).

However, this mandatory language was replaced with discretionary language by the 71st Legislature prior to Bishop's offenses. The word "shall" was replaced with the word "may" by House Bill 2335, and the change was made effective as of the date of enactment of the statute on June 15, 1989. Act of June 15, 1989, 71st Leg., R.S., ch. 785, §§ 5.01, 9.01(c)(1), 1989 Tex. Gen. Laws, 3471, 3536, 3557. The current Government Code thus states, "A parole panel *may* release an inmate on parole during the parole month established for the inmate if the panel determinate that the inmate's release will not increase the likelihood of harm to the public." TEX. GOV'T CODE ANN. § 508.141 (West 2012) (emphasis supplied).

Although H.B. 2335 did not replace every instance of the word "shall" governing the Board at the time of Bishop's offense, *see id.* § 5.01, at 3536–42, none of the other instances to which Bishop alludes in his appellate brief restricted the Board's discretion to release an inmate or created an entitlement to release under certain conditions. Rather, the other uses of the word "shall" referenced by Bishop merely mandated that the Board follow certain procedures in handling cases, for instance, that it "shall establish a tentative parole month for the prisoner . . . and a proposed program of measurable institutional progress," and did not change a prisoner's eligibility for parole or alter the Board's discretion to grant it. *See* Act of June 19, 1987, § 7, at 3756. Changes to procedure that do not make more burdensome the punishment for a crime or that create only the most speculative and attenuated possibility of increasing the measure of punishment do not violate the Texas or federal prohibitions on ex post facto laws. *Garner*, 529 U.S. at 250–51, 120 S. Ct. at 1367–68; *accord Johnson*, 930 S.W.2d at 591. Likewise, assuming without deciding that the retroactive law provision of the Texas Constitution applies in the criminal context, a statutory change that is only procedural or remedial and that does not affect vested, substantive rights is not a prohibited retroactive law. *See Grimes*, 807 S.W.2d at 587.

Bishop also argues that regulations in effect at the time of his offense compelled the Board to hold hearings in panels of three commissioners. In

contrast, the current Government Code requires that all members of the Board vote in order to release an inmate who, like Bishop, was convicted of aggravated sexual assault. TEX. GOV'T CODE ANN. § 508.046 (West 2012). Thus, Bishop contends that the Board has wrongfully required all of its members to vote on his release rather than simply a panel of three.

The former rule relied upon by Bishop stated, "A parole panel shall be composed of any three parole commissioners, or the parole board, or any combination thereof, as constituted from time to time by the board." 12 Tex. Reg. 730 (1987) (proposed Jan. 20, 1987). Bishop emphasizes the use of the word "shall," but on its face, the rule does not require that the Board review cases in panels of three; it also authorizes the entire "parole board" to act as a panel. *See id.*

Bishop further maintains that the Board may not condition his release on completion of a rehabilitation program as authorized by the current Texas Administrative Code. 37 TEX. ADMIN. CODE § 145.12(4)(C) (2014) (Tex. Bd. Of Pardons & Paroles, Action upon Review). He contends that provisions of the Administrative Code and Code of Criminal Procedure in effect at the time of his offense did not permit this procedure. However, Bishop has not directed us to any former regulations or statutes that prohibited the Board from exercising its discretion in this manner. On the contrary, Bishop erroneously argues that because the Board was authorized to impose post-release participation in counseling

10

programs, it was thus barred from conditioning release on completion of a rehabilitation program. *See* Act of June 19, 1987, § 7, at 3757.

Lastly, Bishop contends that the Board must release him if a majority of Board members approve parole, and that the Board may not apply the current provisions of the Government Code that require a supermajority vote to parole a person convicted of sexual assault. *See* TEX. GOV'T CODE ANN. § 508.046.  He emphasizes that at the time of his offense, Board regulations specified that all decisions "shall be by a majority vote of the members voting." 12 Tex. Reg. 230 (1987), *adopted* 12 Tex. Reg. 730 (1987).

Texas courts have previously considered and rejected challenges to the application of the supermajority requirement of section 508.046 under the ex post facto clause. *Teague v. Livingston*, No. 01–10–00075–CV, 2010 WL 4056853, at *4 (Tex. App.—Houston  [1st Dist.] Oct. 14, 2010, no pet.) (mem. op.); *Nabelek v. Garrett*, No. 14–01–00764–CV, 2003 WL 21710243, at *2 (Tex. App.—Houston [14th Dist.] July 24, 2003, pet. denied) (mem. op.). In reaching that conclusion, this court adhered to the reasoning of the Fifth Circuit in *Wallace v. Quarterman*, 516 F.3d 351 (5th Cir. 2008). *See Teague*, 2010 WL 4056853, at *4.

The *Wallace* court upheld the supermajority requirement of section 508.046 against a Texas prisoner's ex post facto challenge. 516 F.3d at 356. As the court explained, in general, "Rules affecting eligibility for parole may violate the clause,

but discretionary rules affecting suitability do not." *Id.* at 355. The court found that the voting requirements of section 508.046 affected suitability, not eligibility for parole. *Id.* The court cautioned, however, that "parole board 'discretion does not displace the Ex Post Facto Clause's protections.'" *Id.* at 356 (quoting *Garner*, 529 U.S. at 253, 120 S. Ct. at 1369). A change in voting requirements could create "more than a 'speculative, attenuated risk of affecting a prisoner's actual term of confinement.'" *Id.* (quoting *Morales*, 514 U.S. at 508–09, 115 S. Ct. at 1603). Therefore, "a court must look to the specific facts of the case, *if a claimant has presented such facts*, to determine whether a new law produces a 'sufficient risk' of increased confinement." *Id.* (emphasis supplied). The court further expounded:

> When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.

*Id.* (quoting *Garner*, 529 U.S. at 255, 120 S. Ct. at 1370).

Both this court in *Teague* and the Fifth Circuit in *Wallace* concluded that on its face, the supermajority requirement of section 508.046 does not create a sufficient risk of increased confinement. *Id.*; *Teague*, 2010 WL 4056853, at \*4. Furthermore, like the appellants in *Teague* and *Wallace*, Bishop has not directed us to evidence of the rule's practical implementation to establish that retroactive application of section 508.046 will result in a longer period of incarceration. *See*

*Wallace*, 516 F.3d at 356; *Teague*, 2010 WL 4056853, at \*4. Like the appellant in *Teague*, Bishop has not argued or presented evidence that he would be released by a Board making decisions by a simple majority vote. *See Teague*, 2010 WL 4056853, at \*4. On the contrary, Owens and Davis presented evidence that each time Bishop was denied parole, including when the Board rescinded its prior decision to grant parole, its vote was unanimous. Accordingly, the trial court did not err in granting summary judgment in favor of Owens and Davis.[*] Bishop's first and second issues are overruled.

## II.    Frequency of parole review

In his third and fourth issues, Bishop argues that replacing a statutorily mandated right to annual parole review with a right to review at longer intervals constitutes an ex post facto violation. Under current regulations, the Board will set the next hearing for an inmate convicted of aggravated sexual assault 36 months after a hearing at which parole is denied. 37 TEX. ADMIN. CODE § 145.15(a)(3)(A)

---

[*]    Although this court in *Teague* did not consider whether the retroactive law provision of the Texas Constitution would yield a different result, we conclude, assuming without deciding that it applies, that it would not because a change in voting requirements is merely procedural and does not affect a substantive, vested right. *See Grimes v. State*, 807 S.W.2d 582, 587 (Tex. Crim. App. 1991); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 205 (Tex. 2002) (holding that retroactive law provision did not bar law that altered initial adjudicating forum because the parties did not have a vested right in tribunal that would decide their case); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002) ("[N]o one has a vested right in the continuance of present laws in relation to a particular subject . . . .").

(2014) (Tex. Bd. of Pardons & Paroles, Action upon Review; Extraordinary Vote).

Bishop claims that the following regulation of the Board in effect at the time of his

offense entitled him to a hearing one year after each denial of parole:

> *If the parole panel recommends parole and parole is denied by the board*, the next parole review month and year of the inmate will be computed by the board from the prior parole review month and year to the discharge date and calculated as follows . . . set off one year from prior parole review month and year . . . .

5 Tex. Reg. 3879 (1980), *amended by* 12 Tex. Reg. 238 (1987), *adopted* 12 Tex.

Reg. 733 (1987) (emphasis supplied). A careful reading of this provision does not

support Bishop's assertion that the law in effect at the time of his offense mandated

annual review. Rather, if a panel of the Board had recommended parole but the full

Board had denied parole, the rule required the Board to set the next parole hearing

for one year later. In other words, it did not mandate annual review in all cases

when parole was denied, but only in a subset of cases in which a panel's decision

was overruled by the full Board. As such, Bishop's assertion that the law in effect

at the time of his offense entitled him to annual review is incorrect. Bishop's third

and fourth issues are overruled.

**III.  Effect of Senate Bill 60 on Government Code Section 508.046**

Section 508.046 of the Government Code currently specifies that in order to

release an inmate on parole who was convicted of aggravated sexual assault, all

members of the Board must vote on the inmate's release and two-thirds of the

members must vote in favor of parole. TEX. GOV'T CODE ANN. § 508.046. Aggravated sexual assault was added to the list of offenses subject to these requirements in 1995. Act of May 29, 1995, 74th Leg., R.S., ch. 250, § 2, 1995 Tex. Gen. Laws 2176, 2176. The change was made retroactive and applies "to a defendant convicted of an offense committed before, on, or after the effective date of this Act." *Id.* § 5, at 2177.

In 2005, the Legislature enacted Senate Bill 60. Act of June 17, 2005, 79th Leg., R.S., ch. 787, 2005 Tex. Gen. Laws 2705. In capital murder cases in which the prosecution seeks the death penalty, S.B. 60 allows the jury to sentence the defendant to life without eligibility for parole. *Id.* § 1, at 2705. If the prosecution does not seek the death penalty, then the judge is required to sentence a defendant convicted of capital murder to life without parole. *Id.* § 6, at 2706. Since S.B. 60 eliminated the possibility of parole for those guilty of capital murder, it also amended sections of the law dealing with parole for these offenders, including section 508.046 of the Government Code. *Id.* §§ 3–5, at 2705–06. Specifically, S.B. 60 eliminated the words "capital felony" from section 508.046 while making no other changes to that section. *Id.* § 3, at 2705.

Bishop's fifth issue is based on his reading of section 17 of S.B. 60, which addressed the act's retroactivity:

(a)  The change in law made by this Act applies only to an offense committed on or after the effective date of this Act. For purposes of

15

this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

(b) *An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed*, and the former law is continued in effect for that purpose.

*Id.* § 17, at 2709 (emphasis supplied). Bishop argues that the emphasized clause amended the law to reverse the provision in S.B. 45 that made section 508.046 retroactively applicable to parole review of those convicted of aggravated sexual assault. He contends that the clause, literally read, is of general application and that to read it otherwise would make it superfluous and repetitive.

In construing statutes, "our primary objective is to ascertain and give effect to the Legislature's intent." *Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex. 2009). "We give effect to legislative intent as it is expressed by the statute's language and the words used, unless the context necessarily requires a different construction or a different construction is expressly provided by statute." *Id.* "Unambiguous statutory language is interpreted according to its plain language unless such an interpretation would lead to absurd results." *Id.*

S.B. 60 was a law about capital murder and did not alter the law pertaining to any other offense. *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008) ("We determine legislative intent from the entire act and not just isolated portions."). In particular, nothing in S.B. 60 addressed parole for those convicted of aggravated sexual assault. Indeed, S.B. 60 made no changes to section 508.046

16

of the Government Code except to delete the words "capital murder." In the context of a law solely regarding capital murder, a correct reading of the word "offense" in section 17 confines it to the offense of capital murder. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003). When general words, such as "offense," follow specific words such as "capital murder," the "general words are not to be construed in their widest meaning or extent." *Stanford v. Butler*, 142 Tex. 692, 698, 181 S.W.2d 269, 272 (1944); *accord City of San Antonio*, 111 S.W.3d at 29. "[T]he meaning of particular words in a statute may be ascertained by reference to other words associated with them in the same statute." *City of San Antonio*, 111 S.W.3d at 29.

Furthermore, section 17 as a whole limits the temporal effect of S.B. 60. For instance, it refers to "the change in law made by this Act" and offenses committed "before the effective date of this Act." Act of June 17, 2005, § 17, at 2709. Provisos that limit the application of a statute are not to be interpreted as enacting independent changes to laws not addressed by the enacting portions of the statute. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 154–55 (2012) ("It would be dangerous to charge upon Congress an intention to enact independent legislation so important in its results, because of its use of a few superfluous words in a clause of a statute, named and having all of

the characteristics of a proviso." (quoting *Pennington v. United States*, 48 Ct. Cl. 408, 415 (1913))).

Nor is Bishop's reading required by the canon against surplusage. The canon against surplusage "assists only where a competing interpretation gives effect to every clause and word of a statute." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1177 (2013); *see also* SCALIA & GARNER, *supra*, at 176 (explaining canon against surplusage applies only when one reading avoids leaving redundant words while another reading does not). Although Bishop's reading of subsection (b) would endow it with a meaning distinct from that of subsection (a), the generality of subsection (b) on his reading would still render subsection a redundant. Bishop's reading is no cure for the belt–and–suspenders drafting employed by the Legislature in section 17 and thus does not draw support from the canon against surplusage. *See City of San Antonio*, 11 S.W.3d at 29 (providing that "effect must be given to every sentence, clause, and word of a statute" but only "when possible to do so"); SCALIA & GARNER, *supra*, at 176–77 ("Sometimes drafters *do* repeat themselves and *do* include words that add nothing of substance . . . .").

In sum, the text of section 17, when considered in context, does not express intent to repeal the retroactivity provision of S.B. 75 or otherwise alter the application of section 508.046 of the Government Code to parole proceedings for those convicted of aggravated sexual assault. Bishop's fifth issue is overruled.

## IV.  Remaining issues

As his sixth issue, Bishop contends that the trial court erred in granting the defendants' motion for summary judgment "based upon a narrowly presented definition of applicable law." He argues that his claims should have been decided by the trial court under what he asserts is the correct legal standard.

Whether the trial court actually applied the correct legal standard is not strictly at issue when an appellate court reviews a summary judgment. Summary judgments are reviewed de novo, and when the trial court does not state its grounds for granting summary judgment, the appellate court will affirm if any of the theories presented to the trial court are meritorious. *See Valence Operating*, 164 S.W.3d at 661; *FM Props.*, 22 S.W.3d at 872. We have addressed Bishop's argument that summary judgment should not have been granted for Owens and Davis; we need not ascertain whether the trial court actually applied the wrong standard in reaching its decision. Bishop's sixth issue is overruled.

In his seventh and final issue, Bishop argues that the trial court erred in granting summary judgment without ruling on his motions to compel discovery and motions for sanctions.

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor . . . ." TEX. R. CIV. P. 166a(b). So

19

while a defendant may only file a no-evidence motion for summary judgment "[a]fter adequate time for discovery," TEX. R. CIV. P. 166a(i), a defendant may move for traditional summary judgment at any time.

If the nonmoving party believes the motion has been filed too soon or without adequate time for discovery, he may oppose it by filing an appropriate affidavit or motion for continuance. As the Supreme Court of Texas explained, "When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996).

In this case, Bishop did not file an affidavit explaining the need for further discovery or a verified motion for continuance. Although Bishop sent several letters complaining to the trial court that the defendants were not complying with discovery, he never requested a continuance or objected to the summary-judgment motion as untimely in his response to Owens and Davis's motion for summary judgment. For this reason, Bishop's seventh issue is overruled. *See id.* at 647.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.